**GENERAL AMERICAN LIFE INSURANCE COMPANY, Appellant,**

v.

**VALLEY FEED MILLS, INCORPORATED, Appellee.**

No. 6143.

Court of Civil Appeals of Texas, El Paso.

Oct. 14, 1970.

Rehearing Denied Oct. 28, 1970.

Hardie, Grambling, Sims & Galatzan, Harold Sims, El Paso, for appellant.

Richard K. Shinaut, Glen Sutherland, El Paso, for appellee.

## OPINION

WARD, Justice.

The beneficiary of a life insurance policy sued for the amount of the annual premium which the insurer withheld when the death benefits were paid to the beneficiary. After trial on stipulated facts and some undisputed testimony, the district court, without the intervention of a jury, rendered judgment against the insurance company for the amount deducted, less the amount of one monthly premium, plus the statutory 12 per cent penalty, interest and attorney's fees. The judgment of the trial court is reversed and rendered.

The two questions presented by the appellant on this appeal are: First, whether the appellant was entitled to deduct an annual premium from the policy proceeds it paid the beneficiary in the policy, rather than a monthly premium only; and second, whether the appellee was barred from any recovery by the release it executed and delivered to the appellant at the time the appellee-beneficiary accepted the amount of proceeds paid by the appellant. Under our disposition of this appeal, the first problem is not reached.

The life insurance policy, in the face amount of $50,000.00, was issued by the appellant as of February 24, 1961, with appellee as the named beneficiary, the insured being the president of the appellee corporation. In general, the policy required that an annual premium be paid in advance as of the date of issue, and subsequent annual payments were required to be paid on each anniversary of the date of issue. The policy also provided that in lieu of annual premiums, semi-annual, or quarter-annual, or monthly premiums could be paid under certain restrictive conditions, and likewise contained provisions for policy loans and automatic premium loans. During the first year or so the premiums were paid on a monthly basis by a preauthorized check plan in accordance with the terms of the policy; thereafter, for several years, on an annual basis in advance by means of applying each annual dividend, increasing the policy loan, and paying the difference in cash; or, as was done in one year, by the payment of the full annual premium in advance. Prior to the anniversary date of the policy of February 24, 1969, the appellant had sent to the appellee a notice that the annual premium would be due on said date in the amount of $2,748.50. No payment was received for this annual premium, the insured having died during the grace period, on March 13, 1969, some seventeen days after the premium was due. On March 27th, due proof of loss was furnished to the company, and the policy of insurance not being found, a lost policy affidavit was furnished. This the company refused to accept. However, on April 11th, the proceeds of the policy, less one year's premium, were paid to the appellee upon the execution by appellee of what is also termed a "Lost Policy Affidavit", which contained, in substance, the same provisions as contained in the previous lost policy affidavit, but which further provided that for the payment, a full release was given to the appellant for all claims under the policy.

At the time of the payment and the execution of this affidavit and release, the position of the company was explained to the authorized representative of the beneficiary, to the effect that on policies issued previous to the year 1963, it was the company's claim that when death occurred during the grace period, the company could deduct an annual premium, but that on policies issued after 1963 they were not doing this. It was also stipulated that if actuaries were called as witnesses in the case, they would testify that premiums for policies issued prior to 1963 were based on 1941 mortality tables, and computation of premiums was based on the assumption that all deaths occurred and all claims were paid at

the end of the policy year of death. On policies issued after 1963, the premiums were based on 1958 mortality tables, and premiums were calculated on the basis that the premium was fully earned only at the end of the policy year, and therefore proration of unearned premiums is allowed on these policies. The beneficiary, relying on various clauses contained in the policy, contended that the company was without any justification in withholding any part of the annual premium.

At the trial the appellant also relied on the release executed by the appellee, as a defense to which appellee pleaded want of consideration. The trial court having concluded that the beneficiary had, by the terms of the policy, the contractual right to pay the premiums monthly in advance, and that other provisions of the policy, at best, were vague and ambiguous, rendered judgment for eleven months return of premiums to the beneficiary. The court further determined that as this was a liquidated amount which was owed to the appellee under the terms of the insurance contract, a payment of less than the amount due under the contract would not constitute a bar or a release of a suit for the balance, as the release would be without consideration.

▆▆▆ This brings us to a consideration of the problem of accord and satisfaction without having to construe the contract of insurance. This same treatment was followed in Industrial Life Insurance Company v. Finley, 382 S.W.2d 100 at p. 104 (Sup.Ct.1964), where the Supreme Court stated:

"In the solution of the problem of accord and satisfaction before us we are not required to construe the basic contract of the parties, and we express no opinion thereon. The various possible constructions and the positions of the parties, reviewed above, are relevant only in the establishment of the fact that there existed a bona fide dispute between the parties * * *

"Much has been written upon the defense of accord and satisfaction. 1 Am. Jur.2d 299, 1 C.J.S. Accord and Satisfaction, p. 460, 1 Tex.Jur.2d 206, 4 A.L.R. 474, 34 A.L.R. 1035, 53 A.L.R. 768, 75 A.L.R. 905, 112 A.L.R. 1219, 4 Tex.L.R. 523, 16 Tex.L.R. 101, 17 Tex.L.R. 205. There must be a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted. The defense may be established by part payment of an unliquidated demand; and '[s]ufficient consideration for accord may inhere in or arise out of a dispute as to liability upon a liquidated claim. This presupposes that denial of liability, in whole or in part, is not mere factitious or mala fides.' Simms Oil Co. v. American Refining Co., Tex.Com.App., 288 S.W. 163 (1926), quoted with approval in Ortiz Oil Co. v. Geyer, 138 Tex. 373, 159 S.W.2d 494 (1942)."

We do have a liquidated claim, and under the only evidence before us, it has been disputed in good faith. This furnishes the so-called consideration. American General Life Insurance Company v. Copley, 428 S.W.2d 862 (Tex.Civ.App., Houston 1968, ref. n. r. e.). The validity of the accord and satisfaction is not affected by the fact that the party who claimed that nothing is due, or that the true sum was less than that claimed by the other party, is subsequently shown to have been in error. H. L. "Brownie" Choate, Inc. v. Southland Drilling Co., 441 S.W.2d 672 (Civ.App., San Antonio 1969; reversed on different grounds, 447 S.W.2d 676). 1 Tex.Jur., Accord and Satisfaction § 30, § 31, and § 32. There was a full meeting of minds under the clear terms of the release. No one of ordinary intelligence could fail to understand that if the release was executed and the check cashed, it would necessarily be in full settlement and satisfaction of the claim. Jenkins v. Henry C. Back Company, 449 S.W.2d 454 (Sup.Ct.1969). There were no pleadings of fraud or other equitable grounds to set the release aside.

We recognize that there are some differences in Texas on the statements that we have made. See Tortuguero Logging Operation, Limited v. Houston, 349 S.W.2d 315 (Tex.Civ.App., San Antonio 1961, wr. ref. n. r. e.), and the comment on that case in 40 Texas Law Review 562. Regardless of that, in the case before us the contract of insurance provided for payment only upon surrender of the policy. This the appellant has foregone under the terms of the release, or Lost Policy Affidavit, of April 11, 1969. Surely this was the necessary "gift of a horse, hawk or robe" and furnished the consideration that has always been followed in Texas. Comment, 6 Texas Law Review 377. The last two points of the appellant are sustained.

The judgment of the trial court is reversed and rendered that appellee take nothing.