HOLLIE TURBERT *v.* MATHER MOTORS, INC., ET AL.

HOUSE, C. J., COTTER, SHAPIRO, LOISELLE and MACDONALD, Js.

Argued October 3—decided November 14, 1973

*Louis M. Winer,* for the appellant (defendant James F. Daley).

*Robert M. Owens,* with whom, on the brief, was *Richard S. Bruchal,* for the appellee (plaintiff).

COTTER, J. The plaintiff, a passenger in an automobile owned and operated by the defendant James F. Daley in a northerly direction on Windsor Avenue, also known as route 5A, in the town of Windsor,

claims she was injured when the Daley car was in a collision with another automobile operated by David Smith. The accident happened in the vicinity of a driveway or drive-in entrance to Mott's Supermarket. A verdict was rendered in favor of the plaintiff and the defendant Smith and against the defendant Daley, who has taken this appeal from the judgment.

We consider the claimed errors in the charge and the ruling of the court on the finding, with the correction to which the defendant Daley is entitled. The paragraphs in the finding that the defendant offered evidence to prove and claimed to have proved that the place where the collision occurred was an intersection within the meaning of the statutes are, as requested in his assignments of error, corrected to the extent that he did not offer evidence or claim that the area was such an intersection. Other corrections to the finding to which the defendant is entitled are not material to the decisive issues and would not change the result in any way. A finding in a jury case is a mere narrative of the facts claimed to have been proved, designed to test the correctness of the charge and the rulings of the court. *State* v. *Carnegie,* 158 Conn. 264, 266, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455.

Viewing the evidence presented in the light most favorable to the plaintiff, the jury could have found the following: Windsor Avenue, or route 5A, runs generally north and south, with two lanes southbound and two lanes northbound; the northbound and southbound portions of the avenue, which were each approximately twenty-four feet wide, were separated by a median or divider approximately

six feet in width for that portion of Windsor Avenue from a point approximately 100 yards south to a point 100 yards north of the drive-in entrance to Mott's Supermarket. There was an opening in the divider approximately 100 feet long. In the vicinity of the drive-in entrance to the supermarket traffic lights were suspended over Windsor Avenue, showing red, green and amber signals to traffic southbound and northbound on Windsor Avenue, which were arranged to display a green light to southbound traffic approximately five seconds before a green light was shown to northbound traffic so that southbound cars could make a left-hand turn into the supermarket parking lot. There were also two so-called trips located in the supermarket driveways to activate the overhead traffic lights as indicated in a full exhibit introduced into evidence.

The defendant Smith had been driving his car south on Windsor Avenue at about 10 p.m. on the evening of the collision; directly after the accident the Smith car was located on the east side of the northbound lanes heading in a northeasterly direction, north of the Daley car which also came to rest in the northbound lanes partly in the driveway leading into the supermarket, facing in a northeasterly direction.

The defendant Smith had stopped at the traffic light with his left blinker on, intending to make a left-hand turn into the driveway. A car was stopped in the left-hand northbound lane, and when the light turned green for him, Smith waited for that car to move northerly, which it failed to do. Smith proceeded to make a left-hand turn and as he did so he was struck by the Daley car which was in the right-hand northbound lane.

The posted speed limit in the vicinity of the collision was thirty-five miles per hour in both directions; the portion of Windsor Avenue from 200 yards to the south of the opening in the esplanade in front of the twenty-four foot wide supermarket driveway to a point approximately 200 yards to the north of that opening was generally level and substantially straight.

When the vehicles stopped immediately after the collision, the right rear portion of the Daley car was approximately six and one-half feet from the east curb line of Windsor Avenue, on the traveled portion of the northbound lanes adjacent to the supermarket driveway entrance, and the rear portion of the Smith car also came to rest on the traveled portion of Windsor Avenue.

The defendant Daley claims that the trial court erred in instructing the jury under General Statutes § 14-299 (b) which he argues is inapplicable to the facts of this case so that the instructions imposed inconsistent duties upon the drivers and confused the jury; and that the trial court erred in limiting the cross-examination of a police officer and excluding an exhibit offered by the defendant.

The determinative issue in this case is whether, as the defendant Daley contends, the trial court erred when it charged the jury pursuant to General Statutes § 14-299 (b), which regulates the right-of-way at intersections when traffic is directed by traffic control signals exhibiting colored lights. The crux of the defendant's argument is that the rules prescribed by § 14-299 (b) apply, by its specific terms,[1] only to intersections as defined by General

[1] The pertinent language of § 14-299 (b) reads: "When traffic at an intersection is alternately directed to proceed and to stop by the use of signals exhibiting colored lights or lighted arrows . . . ."

Statutes § 14-1 (18) which states that an intersection "means the area embraced within the prolongation of the lateral curb lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other." The defendant Daley claims that the area in question does not fall within the statutory definition because, as he argues, there is only one highway as defined by General Statutes § 14-1 (16),[2] despite the existence of traffic control signals suspended over the highway and at the supermarket entrance, a one-hundred-foot break in the esplanade, a five-second lead green light to allow southbound cars to turn left into the parking area, a pedestrian crosswalk enclosed by painted lines, and "trip" mechanisms at the entrance to control the light.

Section 14-299 (b) of the General Statutes is the only section which governs motor vehicle operational conduct at areas controlled by signals exhibiting colored lights and which, at the time of the collision, mandated rules applicable to drivers facing green lights at intersections. There was no statute which specifically governed the conduct of drivers at traffic control signals exhibiting colored lights at areas other than "intersections." The trial court did not instruct the jury that the site of the accident was an intersection as the word is commonly used or an "intersection" within the meaning of the term as defined by § 14-1 (18). Rather, the court charged that there was a statute which applied when a light changed from green to red and which defined the meaning of the green light. The court then quoted

[2] The pertinent language of § 14-1 (16) reads: " 'Highway' includes any . . . alley, driveway . . . or place, under the control of the state or any political subdivision thereof, dedicated, appropriated or opened to public travel or other use."

portions of the statute, including that language which required that traffic facing a green signal must yield to traffic lawfully within the intersection. The issue presented, therefore, assuming arguendo that the area controlled by the traffic light was not an intersection within the definition of § 14-1 (18), is whether the trial court's statement defining the legal duties of drivers confronting a green light at an intersection was correct as applied to operators facing the green light controlling traffic on the four-lane highway, the cross-over area and the super-market drive-in.

Other jurisdictions have resolved the enigma wherein the legislature did not in statutory language specifically provide rules for particular factual situations involving traffic lights; e.g., the Supreme Court of Nebraska has held, where there was no statute relating to left turns at a traffic light, that "[i]n the absence of a statute or ordinance, the meaning to be given to a traffic control signal is that which a reasonably prudent motorist would understand and apply." *Heavican v. Holbrook*, 187 Neb. 814, 818, 194 N.W.2d 208; *Galloway v. Hartman*, 271 N.C. 372, 377, 156 S.E.2d 727; 60A C.J.S. 536, Motor Vehicles, § 360 (1). Furthermore, some jurisdictions have held that statutes governing intersections applied to areas which appeared to be intersections but were not technically intersections because private roads were abutting public roads. *Grulich v. Paine*, 231 N.Y. 311, 132 N.E. 100; *Perry v. Carter*, 14 La. App. 102, 129 So. 388. The rationale of these cases was stated succinctly by the New York Court of Appeals in the *Grulich* case, supra, 316, wherein a railroad depot driveway abutted a public road: "The statutes are intended to promote safety, order and convenience. The same reasons why

drivers of motor vehicles should observe the rules that are generally accepted and enforced in crossing streets where another street intersects or abuts, exist at the entrance of the driveway in question as if it had been dedicated to and accepted by the public."

References in a charge to the jury concerning the rights and duties of motorists in intersections have been held not erroneous in a case involving a collision which occurred when an automobile was making a left turn into a shopping center parking lot on a divided four-lane highway. The court reasoned that regardless of whether the area in question was an intersection, the trial court's charge was not prejudicial because it correctly stated the applicable law. *Gilmore* v. *Marsh,* 424 Pa. 361, 227 A.2d 881.

A driver when faced with a green light at an intersection must act as a reasonably prudent person with a knowledge that he cannot proceed in disregard of other vehicles in the intersection. General Statutes § 14-299 (b); *Gorman* v. *American Sumatra Tobacco Corporation,* 146 Conn. 383, 386, 151 A.2d 341; *Rose* v. *Campitello,* 114 Conn. 637, 640, 159 A. 887. We have also said that in determining what is reasonable care under all the circumstances and what rules of the road are applicable, the conduct of the parties should be judged from the viewpoint of the reasonably prudent person. Although an area may not fall within the prescribed definition of an intersection, we have held that a pedestrian was justified in assuming that a driver was subject to the usual intersection rules and, therefore, that he would keep to the right of the center of the highway in turning to his left

into a private entrance. *McInerney* v. *New England Transportation Co.*, 131 Conn. 633, 635, 41 A.2d 764; *Heavican* v. *Holbrook,* supra. In the *McInerney* case, supra, the plaintiff was struck by a bus at an area where a private way intersected a public street. The defendant maintained that there was no requirement, as in the case of public street intersections, to keep to the right of center of such an intersection. This court rejected this contention and stated (pp. 634–35): "The jury were bound to consider the conduct of the plaintiff from the viewpoint of the reasonably prudent person and might well have found that to such a person the private way would have appeared to have been part of the city highway system subject to the rules of the road relating to public ways."

Automatic traffic control systems are intended to minimize the dangers inherent at the locations where they are installed and it is the duty of motor vehicle operators to obey and observe traffic signals. Drivers, passengers and pedestrians, for instance, have a right to assume that an apparently legal traffic light was placed by legal authority, which is not disputed in the case before us, that the parties act accordingly as reasonably prudent persons under the circumstances, and that the signal is still effective to control the question of negligence of one who disregards it, at least to the extent that such disregard may be taken into consideration as one of the circumstances to be passed upon. *Geisking* v. *Sheimo,* 252 Iowa 37, 41, 105 N.W.2d 599; note, 164 A.L.R. 8, 216; Blashfield, Automobile Law & Practice (Perm. Ed.) §§ 686.5, 998, 1040.

Regardless of whether the area in question be considered an intersection within the meaning of General Statutes § 14-1 (18), the trial court did not

erroneously impose legal burdens upon the drivers at the area in question which reasonably prudent drivers should not have assumed. Application of different standards to drivers facing green lights at divided highways with enclosed crosswalks and cross-vehicular traffic but not a statutory "intersection" would be contrary to the interests of safety and good order by contravening the normal expectations of reasonably prudent drivers, and a statutory definition is not always applicable to a complicated traffic pattern. *Baird* v. *Gaer Bros., Inc.,* 152 Conn. 219, 223, 205 A.2d 490; *Mathis* v. *Bzdula,* 122 Conn. 202, 206, 188 A. 264. Statutory rules of the road are to be interpreted in light of their purpose to prevent collisions, "and, if their meaning is not definitely settled by the language used, they are to be interpreted in the light of their application to traffic moving over the highways." *Mathis* v. *Bzdula,* supra, 205. Constructions are to be avoided which are impractical and undesirably rigid. *Baird* v. *Baer Bros., Inc.,* supra, 223.[3]

Not to utilize the statute, § 14-299 (b), in instructing the jury under the circumstances of this case would lead to absurd consequences or to "possible bizarre results"; *Bridgeport* v. *Stratford,* 142 Conn. 634, 641, 642, 116 A.2d 508; since operators of motor vehicles might otherwise justifiably disregard such traffic control signals with impunity.

---

[3] In 1967, the year following the collision in question, the legislature amended § 14-299 as follows: "(f) If a traffic control signal, approved by the state traffic commission, is erected and maintained at a place other than an intersection, the provisions of this section shall be applicable except as to those provisions which by their nature can have no application. Any stop required shall be made at a sign or marking on the pavement indicating where the stop shall be made, but in the absence of any sign or marking the stop shall be made at the signal." Public Acts 1967, No. 428.

The defendant Daley claims not only that § 14-299 (b) was inapplicable but also that it prescribed a different right-of-way than the statute under which he requested the trial court to charge, General Statutes § 14-242 (a). The court instructed the jury pursuant to both statutes, paraphrasing § 14-242 (a). Immediately following this recitation, the court specifically told the jury, clearly applying § 14-242 (a) to the southbound defendant that unless the jury found that the defendant Smith made a left turn to enter the supermarket parking lot at a time when it could not be done with reasonable safety, the jury must find that defendant negligent.

Although § 14-242 (a) does embody a standard for vehicles turning left into a private alleyway, it has often been applied to left turns at intersections. *Ramonas* v. *Zucker,* 163 Conn. 142, 147, 302 A.2d 242; *Michaud* v. *Gagne,* 155 Conn. 406, 409, 232 A.2d 326; *Kronish* v. *Provasoli,* 149 Conn. 368, 371, 179 A.2d 823. The legislature has recognized that a standard of reasonable safety applies both to left turns into private alleys and left turns within intersections with its recent repeal of § 14-246 (Public Acts 1971, No. 66) and enactment of § 14-242 (e), which in specific terms imposes the same duties upon drivers intending to turn left in either case.[4]

---

[4] "[General Statutes] Sec. 14-242. TURNS RESTRICTED. SIGNALS TO BE GIVEN. STOPPING. U-TURNS. LEFT TURNS. . . . (e) The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or within the area formed by the extension of the lateral lines of the private alley, road or driveway across the full width of the public highway with which it intersects, or so close to such intersection of public highways or to the area formed by the extension of the lateral lines of said private alley, road or driveway across the full width of the public highway as to constitute an immediate hazard." (1971 Noncumulative Supplement)

This duty is the same upon a driver facing a green light, intending to turn left; § 14-299 (b); except to the degree that it may impose a higher standard of care in requiring the driver to yield not only to vehicles within the intersection or extended lateral lines but also to those so close as to constitute an imminent hazard. Yet a driver facing a green light -must operate his vehicle with reasonable safety and cannot disregard the presence of other vehicles which might be approaching the intersection. *Pinto* v. *Spigner,* 163 Conn. 191, 196, 302 A.2d 266; *Rose* v. *Campitello,* 114 Conn. 637, 640, 159 A. 887.

The evidence at the trial was in sharp conflict as to the relevant and material facts surrounding the collision and the jury could properly conclude that the negligence of either Daley or Smith or of both, caused the collision and the resultant injuries to the plaintiff. The question was one of fact and was resolved by the verdict.

While not exhaustive, the charge presented the issues to the jury in a manner sufficient for its guidance and contained a correct statement of the legal duties imposed upon the drivers at the area in question. *Ramonas* v. *Zucker,* supra, 149; *Michaud* v. *Gagne,* supra, 412. The court clearly applied the duty of reasonable safety upon the southbound defendant as requested by the defendant Daley.

Finally, the defendant Daley contends that the trial court improperly rejected cross-examination of a police officer, not an eyewitness, which attempted to elicit from the officer his understanding of what the defendant Daley meant when Daley told the officer that the southbound car turned "behind" the third unidentified vehicle in the left northbound lane. The court also rejected the officer's report

because it contained the officer's conclusion as to the cause of the accident. The officer was allowed to read portions of his report and testify from it concerning what the defendant told him. Both defendant and plaintiff testified and submitted to cross-examination.

The admissibility of lay opinions is within the trial court's discretion and its decision will not be reversed unless that discretion is abused. *State v. Orsini,* 155 Conn. 367, 372, 232 A.2d 907. The trial court could reasonably conclude that a police officer, not a witness to the accident, was being asked to give his opinion as to what in fact happened at the time of the collision. When questioned concerning his intent in writing a certain paragraph of his report, he stated: "I drew a conclusion what caused the accident." The court did not abuse its discretion in refusing to admit the testimony or the report. As we said in *Mucci v. LeMonte,* 157 Conn. 566, 569, 254 A.2d 879: "Moreover, a police officer's conclusion about the cause of or responsibility for an injury is merely an opinion which the officer would not be permitted to give if he was on the witness stand. *Giamattei v. DiCerbo,* 135 Conn. 159, 163, 62 A.2d 519." See McCormick, Law of Evidence § 56.

There is no error.

In this opinion the other judges concurred.