Stanley KENNEDY and Federal
Kemper Insurance Company,
Appellants,

v.

Donald HAGEMAN and State Farm
Mutual Automobile Insurance
Company, Appellees.

Court of Appeals of Kentucky.

Oct. 4, 1985.

Rehearing Denied Nov. 22, 1985.

Discretionary Review Denied and
Opinion Ordered Published by
Supreme Court March 12, 1986.

Thomas N. Kerrick, G.D. Milliken, Jr., Bowling Green, for appellants.

William J. Rudloff, Bowling Green, for appellees.

Before HAYES, C.J., and GUDGEL and MILLER, JJ.

GUDGEL, Judge:

This is an appeal from a judgment entered by the Logan Circuit Court in a tort action which arose as a result of an automobile collision. Appellants contend that the court erred (1) by refusing to give their tendered instruction on last clear chance, (2) by erroneously instructing the jury as to duties appellant Stanley Kennedy was required to observe, and (3) by permitting a state trooper to express an opinion that negligence on Kennedy's part was a cause of the accident. We agree with appellants' contentions. Hence, we reverse and remand with directions to grant appellants a new trial.

On October 24, 1982, at approximately 11:00 p.m., Kennedy was traveling in the eastbound lane of U.S. Highway 68, which is a blacktopped two-lane road twenty-four feet in width. The weather was clear, cool, and dry. Hence, visibility in both directions was good. As Kennedy reached a point about two-tenths of a mile from a well-known landmark situated near the highway, a deer jumped from a ditch and collided with his vehicle. Kennedy brought his vehicle to a stop at a point which blocked both the east and westbound lanes of travel, and the deer, which was killed, ended up in a ditch on the north side of the road.

Intending to put the deer in the trunk of his vehicle, Kennedy drove his car to the north edge of the road, which lies along the westbound lane of travel, and stopped. According to witnesses, his vehicle then blocked anywhere from eighteen inches to all of the westbound lane of U.S. 68. Further, since the front of his eastbound vehicle faced traffic headed west, his illuminated headlights shone in the faces of approaching drivers. Although Kennedy was not sure at the trial whether his headlights were set on dim or bright, he was certain that his interior lights were on during this time.

Two or three cars passed Kennedy after he first stopped in the middle of the road, and two or three more passed him after he moved to the north edge of the road. After Kennedy exited from his vehicle he checked it over and then went to the rear, opened his trunk, and began to load the deer carcass. At that moment he heard what "sounded like ten sticks of dynamite going off," as his vehicle was hit by one driven by appellee Hageman. Kennedy sailed through the air and landed in a nearby field beneath the deer and his vehicle. He sustained severe personal injuries.

Appellee Hageman testified that, prior to the accident, he was traveling in the westbound lane of U.S. 68 after attending a music concert in Bowling Green. As he topped a crest in the road near the well-known landmark mentioned previously, Hageman observed two sets of headlights which appeared to him to be those of two vehicles blocking both lanes of the highway in front of him. One set of headlights was about three to four car lengths away, and the other was about ten to fifteen car lengths away. As he approached the vehicles, at a speed of 40 to 45 mph, Hageman let off on the gas, slowing down to 30 to 35 mph, but did not apply his brakes. While Hageman was still about ten car lengths away from Kennedy's parked vehicle the other vehicle, a truck, passed Hageman in the opposite lane. No other traffic was present. At a point three to four car lengths away from Kennedy's car, Kennedy's lights blinded Hageman, and he was unable to determine the vehicle's exact location on the highway. However, he finally concluded that Kennedy's vehicle was completely blocking the westbound lane of travel. Hence, Hageman immediately applied his brakes, and unsuccessfully swerved to the right in an attempt to avoid the ensuing collision.

A state police officer who investigated the accident found six-foot long skid marks left by Hageman's vehicle, and determined that the point of impact was in the westbound lane, three to four feet from the north edge of the road. Further, the trooper testified that Hageman would have been able to observe Kennedy's parked vehicle for approximately 1,000 feet, and would have had an unobstructed view of the highway for 500 feet beyond the point of impact. The trooper was also allowed to testify, over objection, that he listed improper parking of Kennedy's vehicle as a factor contributing to the accident.

At the close of the trial, appellants' tendered instruction on last clear chance was

refused. Moreover, all of appellants' objections to instructions which imposed certain duties on Kennedy were overruled. The jury found that negligence of both Kennedy and Hageman was a substantial factor in causing the collision. The court entered a judgment which conformed to the jury's verdict. This appeal followed.

■ First, appellants contend that the court erred by failing to give their tendered instruction on last clear chance. We agree. The evidence shows that Hageman was aware, for a considerable distance before impact, of the presence of two vehicles blocking the road in front of him. Further, according to his own testimony, he approached the parked Kennedy vehicle at a speed of no more than 30 to 35 mph but, although the testimony indicates that Hageman had approximately ten car lengths in which to stop his vehicle after passing the truck, he did not apply his brakes until he was only three to four car lengths away from Kennedy's vehicle. Finally, it is undisputed that at the time of the collision, the eastbound lane of the highway at or near the point of impact was unoccupied by other vehicles.

It is our opinion, in view of the evidence, that reasonable minds could have believed that Hageman should have become aware prior to the collision that Kennedy's vehicle was parked, and that he had a clear chance, given the rate of speed at which he was traveling, either to bring his vehicle to a stop prior to the collision, or alternatively, to have safely gone around Kennedy's vehicle by utilizing the unoccupied eastbound lane of travel. We conclude, therefore, that the court erred by refusing to give appellants' tendered instruction on last clear chance. *Wheeler v. Creekmore*, Ky., 469 S.W.2d 559 (1971); *Mullins v. Bullens*, Ky., 383 S.W.2d 130 (1964).

■ However, since this case will be retried, the doctrine of comparative negligence will be applicable at the retrial. *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984). Thus, we must also address the issue of whether, if the evidence is substantially the same, the court should give an instruction

on last clear chance at the retrial. We conclude that it should not. This conclusion is based on Justice Leibson's statement in *Hilen v. Hays, supra* at 718, that the comparative negligence doctrine *"eliminates a windfall for either claimant or defendant* as presently exists in our all-or-nothing situation where sometimes claims are barred by contributory negligence and sometimes claims are paid in full regardless of contributory negligence *such as in cases involving last clear chance* or defendant's willful or wanton negligence." (Emphasis added.) By this statement, we believe the majority of the Kentucky Supreme Court clearly indicated that they intended, by adopting the doctrine of comparative negligence, to also abolish the doctrine of last clear chance. Moreover, in most jurisdictions which have considered this same issue after having adopted the pure form of comparative negligence, the same conclusion has been reached. *See, e.g., Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). We fail to perceive any valid basis for declining to follow this view. Hence, at the retrial of this action the court should not give an instruction on last clear chance.

Next, appellants contend that the court erred by instructing the jury that Kennedy was bound to observe certain duties. We agree.

■ Appellee Hageman's theory of liability was that Kennedy was negligent because he parked his vehicle on the highway, blocking a lane of travel, with his bright lights shining in the face of drivers who approached him in that lane. Hageman did not claim, however, that Kennedy's action in *driving* his vehicle to the north edge of the road was, standing alone, a causative factor in the collision. Thus, Instruction I(D), which imposed a duty not to do so, should not have been given. Further, as the evidence was simply insufficient to support a finding that Kennedy was intoxicated, or that he failed to have his lights illuminated, the court should not have given Instructions I(F) and I(G). Moreover, as the applicable statute, KRS

189.043, does not impose a mandatory duty on motorists to utilize their emergency flasher lights, Instruction I(I) which imposed such a duty on Kennedy was erroneous. In addition, Instruction I(E), to the extent that it omitted certain qualifying language included in the statute which regulates the stopping of automobiles on the highway, was also erroneous. We perceive no error, however, in the court's Instruction I(H), which imposed a duty on Kennedy to dim his headlights.

 Finally, we also agree with appellants that the court's instruction, that Kennedy had certain other duties after exiting his vehicle, was both erroneous and prejudicial. In short, even if Kennedy had breached all of these duties, none could have been a substantial factor in causing the collision of the parties' vehicles. Kennedy's breach of one or more of these duties was, at most, only a causative factor in increasing the severity of the injuries he sustained. Thus, any breach of these duties was irrelevant to the issue of Kennedy's liability, and including these duties in the instructions could only have served to unfairly confuse the jury. We hold, therefore, that the court erred by instructing the jury on these duties.

Finally, appellants contend that the court erred by permitting the investigating state trooper to testify that he listed Kennedy's improperly parked vehicle as a contributing factor in the collision on his police report. We agree. Clearly, the trooper's testimony in this vein was equivalent to an expression of opinion by him as to one party's negligence having caused the accident. Although state troopers may in some instances be qualified to express opinions as to the points of impact in collisions, they are not entitled to usurp the function of the jury and to state their opinions as to whose negligence may have caused the accident. The court, therefore, erred by admitting the testimony as to the trooper's opinion on this point in the instant action. R. Lawson, *Kentucky Evidence Law Handbook* § 6.15(A)(2) (2d ed.1984); *See*

*Mulberry v. Howard,* Ky., 457 S.W.2d 827 (1970).

The court's judgment is reversed and remanded with directions to grant appellants a new trial consistent with the views expressed in this opinion.

All concur.