Edwin A. STUCKER, Clara Barton Stucker, September Ayers Finley and Larry Wayne Ayers, b/n/f Edwin A. Stucker, Plaintiffs–Appellants,

v.

John David CHITWOOD and Robert McAdams, Defendants–Respondents.

No. 17580.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 2, 1992.

Stephen C. Wilson, Buerkle, Beeson & Ludwig, Jackson, for plaintiffs-appellants.

James E. Spain, Spain, Merrell, and Miller, Poplar Bluff, for defendants-respondents.

FLANIGAN, Chief Judge.

On March 26, 1992, this court issued an opinion in this cause. On June 2, 1992, by order of the Supreme Court of Missouri, this cause was transferred to that court. On November 24, 1992, the Supreme Court entered an order retransferring the cause to this court. The original opinion of this court, which follows, is now readopted and reissued.

This is an action for the wrongful death of Brenda Ayers who died in a collision which occurred on September 15, 1987, at approximately 12:07 a.m. on U.S. Highway 60 in Butler County. Brenda was the driver of a 1980 Dodge sedan which collided with a tractor-trailer unit, an 18-wheeler, driven by defendant John Chitwood and owned by his employer, defendant Robert McAdams. Plaintiffs are Brenda's survivors.

The petition pleaded that Chitwood was negligent in failing to drive on the right hand side of the roadway. The answer pleaded that Brenda's death "was the direct and proximate result of the carelessness and negligence of [Brenda] contributing thereto." At the trial, defendants conceded agency. The jury returned a verdict in favor of defendants and assessed their percentage of negligence as zero. Plaintiffs appeal.

Prior to the collision, Brenda was driving the Dodge eastwardly on Highway 60, and Chitwood was driving the tractor-trailer unit westwardly. At the place where the accident occurred, Highway 60 is a two-lane highway running generally east and west, essentially level, with a five-foot shoulder on each side. The road is about 10 to 15 feet above the surrounding terrain and drops sharply on the north side.

Skid marks of both vehicles indicated that each applied its brakes while in the north or westbound lane. In other words, the Dodge was on the wrong side of the road prior to the collision. The parties agree that at the moment of impact, which took place in the eastbound lane, both vehicles were entering the eastbound lane.

Plaintiffs' principal witnesses on the issue of liability were Sgt. Jerome Burford of the Missouri State Highway Patrol, and John Bentley, a professional engineer who practices in the field of accident reconstruction.

■ Plaintiffs' point, based upon an incident which occurred during the cross-examination of Sgt. Burford by defense counsel, states: "The trial court erred in permitting Sgt. Burford to testify over objection that he found no contributing circumstances on behalf of defendant Chitwood in causing the accident for the reason that such testimony was a conclusion, was not supported by any evidentiary foundation establishing expertise, and further such testimony invaded the province of the jury, going to an ultimate issue to be decided by the jury."

Sgt. Burford was the only officer who investigated the accident. On direct examination, Burford testified that he arrived at the scene at 12:25 a.m., approximately 20 minutes after the collision had occurred. He testified with respect to conditions which he found at the scene, including the final positions of the vehicles and location and measurements of skid marks. Without objection, he testified with respect to the location of the point of impact, a matter concerning which there was no dispute. The area of impact was about three feet south of the center lane.

On cross-examination, over objection of plaintiffs' counsel, defense counsel posed the following question: "Based on your investigation and based upon what you found out there, did you find any contributing circumstances of Mr. Chitwood?" The witness answered, "No, sir." The grounds of the objection were, in essence, the same grounds set forth in plaintiffs' point.

It is clear that the witness's answer to the challenged question was considered significant by both sides. The final argument of defense counsel included the following:

"This trooper, who it is part of his job, told you. He is far more of an expert at investigating automobile accidents than the

guy that was paid. This trooper said he found no contributing circumstances—

MR. WILSON: Judge, I object to this argument he took issue to that earlier and—

MR. SPAIN: And the objection was overruled, Your Honor.

THE COURT: I think that's true. It's closing argument.

MR. SPAIN: This unpartial expert witness said he found no contributing circumstances and not ten percent, zero. And that's why you ought to put the zero right here because that's where it is. This is their case."

The challenged question is quite broad. The witness was asked if he found "any contributing circumstances" on the part of Chitwood. Clearly the question sought the opinion of the witness on whether Chitwood's mode of operation of the 18–wheeler had any causal connection with the collision and its tragic consequences. His answer amounted to a statement that in his opinion, based on his investigation, Chitwood was not at fault and that his percentage of fault was zero. Such was the plain meaning of his answer, and such was the construction placed upon the answer by defense counsel.

Seeking to uphold the trial court's ruling on the challenged question, defendants argue that "the admission of such evidence is within the trial court's discretion and is not objectionable by virtue of the fact that it embraces an ultimate issue to be decided by the trier of fact." Defendants also say that § 490.065 [1] "governed the issue of the admissibility of this evidence.... The scope of expert testimony is greatly enlarged by the enacting of this statute."

Section 490.065, enacted in 1989, and which was in effect at the time of the trial, reads, in pertinent part:

1. In any civil action, *if* scientific, technical or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue,* a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

2. Testimony by such an expert witness in the form of an opinion or inference *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. (Emphasis added.)

Section 490.065.1 is identical to Federal Rules of Evidence, Rule 702, except that the latter rule does not have the opening words "in any civil action." Section 490.-065.2 is, for civil case purposes, the equivalent of Federal Rules of Evidence, Rule 704(a).

■ Defendants make no attempt to justify the question on the ground that such testimony could properly be elicited from a lay witness. The statute on which defendants rely makes no mention of lay testimony. "A jury of laymen, possessed of the facts, is as competent as a witness to draw conclusions on subjects within the experience and knowledge common to mankind in general, and opinion testimony may be excluded because superfluous." *Christian v. Jeter,* 287 S.W.2d 768, 770 (Mo.1956). "Generally, witnesses must state facts from which the jurors are to form their opinion, but when a witness has personally observed events, he may testify to his 'matter of fact' comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with ordinary experiences of everyday life." *Patton v. May Dept. Stores Co.,* 762 S.W.2d 38, 42 (Mo.banc 1988). *Christian* and *Patton* involved admissibility of the opinion of a lay witness. Compare Federal Rules of Evidence, Rule 701, which reads:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S.

Defendants argue that the question was proper because, so they say, Burford was an expert and the statute permitted the inquiry.

■ Missouri courts have held that the opinion testimony of expert witnesses "should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." *Sampson v. Missouri Pacific R. Co.*, 560 S.W.2d 573, 586[17] (Mo. banc 1978). To similar effect see *Hendricks v. M–K–T R. Co.*, 709 S.W.2d 483, 492[7] (Mo.App.1986). The essential test of admissibility of expert opinion evidence is whether it will be helpful to the jury. *Hendricks*, at 493[8].

Even before the enactment of § 490.065, this court said:

[A]n expert's opinion as to causation is no longer objectionable solely upon the ground that the opinion bears on an ultimate issue in suit. *Eickmann v. St. Louis Pub. Sv. Co.*, 363 Mo. 651, 663–664, 253 S.W.2d 122, 129–130[7, 8] (1952). Nevertheless, our Supreme Court has balked at permitting the complete "reconstruction" of automobile casualties so as to permit the allocation of fault by expert hindsight. *Housman v. Fiddyment*, 421 S.W.2d 284, 289[1–4] (Mo. banc 1967).

*Deskin v. Brewer*, 590 S.W.2d 392, 397 (Mo.App.1979) (citing authorities).

In order for an expert witness to be qualified it must appear that by reason of education or specialized experience he possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of drawing correct conclusions.

*Shelby County R–IV School District v. Herman*, 392 S.W.2d 609, 616 (Mo.1965).

The question of the qualification of a witness as an expert in the field concerning which his testimony is sought and the necessity for admission of expert testimony in a given situation rests in the first instance in the sound discretion of the trial court, and its decision in those respects is not to be set aside in the

absence of showing of an abuse of discretion.

*Yocum v. Kansas City Public Service Company*, 349 S.W.2d 860, 864[1] (Mo. 1961).

Sgt. Burford testified that he had been with the patrol over 22 years, had investigated "a number of accidents," and that investigating automobile accidents was a part of his regular duties. There was no showing, however, with respect to the details of his educational background, professional training, or prior duties and assignments. This court holds that the challenged question was improper, whether Sgt. Burford was an expert or not.

■ Even if the witness is qualified as an expert, as required by § 490.065.1, his testimony, "in the form of an opinion or otherwise," is admissible conditionally. The condition is that the specialized knowledge of the expert "will assist the trier of fact to understand the evidence or to determine a fact in issue." Section 490.065.2 refers to expert testimony which is "otherwise admissible." An overall reading of the statute makes it clear that even if the witness is an expert and has an opinion, those two factors alone will not make the opinion admissible. There is the additional requirement that scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue.

In its note following Rule 704, Federal Rules of Evidence, the Federal Advisory Committee commented:

The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oathhelpers of an earlier day.

Rule 403, Federal Rules of Evidence, reads: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of un-

fair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Attorneys experienced in the trial of damage suits arising out of highway accidents know that the investigating officer is a very important witness. Jurors, as well as other members of the general public, properly have great respect for the personnel of the Missouri State Highway Patrol, an organization of outstanding professional competence.[2] The testimony of the witness in the blue uniform is likely to have a significant influence on the jury's resolution of the issue of liability.

The investigating officer has several duties to perform. They include lending emergency assistance, examining the vehicles and the scene, and issuing traffic citations where appropriate. It is not his function to reach an opinion as to civil liability or to attempt to determine mathematically the degree of fault of any participant. Nevertheless, if he reaches an opinion as to such matters and is permitted to state that opinion to the jury, there is a substantial risk that the jury, or some members of it, will accord undue weight to his testimony and fail to give proper consideration to the rest of the evidence.

In this era of widespread highway travel and numerous highway collisions, a jury, usually composed of adult drivers for the most part, is capable of reaching its own conclusions with regard to fault and degree of fault in a case of this type. *See Dunkin v. Reagon*, 710 S.W.2d 498, 500 (Mo.App. 1986). The instructions and verdict forms impose that duty on the triers of fact and guide its proper performance. The challenged testimony was of no aid to the jury in understanding the evidence or determining the facts in issue. This view is consistent with Missouri cases which hold that it is improper to introduce evidence showing that the investigating officer did or did not issue a traffic citation to a driver. *See Wills v. Townes Cadillac–Oldsmobile, Inc.*, 490 S.W.2d 257, 262–263 (Mo.1973);

*Cotton v. Pyle*, 400 S.W.2d 72, 75[1] (Mo. 1966); *Dorrell v. Moore*, 504 S.W.2d 174, 177 (Mo.App.1973). The decision of the officer on whether a citation should be issued would, of course, be prompted by his opinion with regard to the driver's conduct. In *Wills*, at 263, the court said that whether the officer considered a driver's conduct careless and imprudent in any respect was a false issue and that it was the jury's role to make that determination.

In *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423 (1978), the court said, 580 P.2d at 431:

[E]xperienced police officers and reconstruction experts, having the requisite experience and training, should be permitted to express opinions as to the speed of vehicles involved in highway collisions when based upon the evidence observed at the scene of the accident, including direction of travel, skid marks, point of impact, damages to the vehicles, and the location in which the vehicles came to rest. We have concluded, however, that a highway patrolman or other expert may not properly state either his opinion as to which of the parties was at fault in causing an accident or his opinion concerning what actions of the parties contributed to the accident. An act of negligence which contributes to an accident must, of necessity, have at least a part in causing the accident. We note that in Webster's Third New International Dictionary 496 (3rd ed.), the word "contribute" is defined in a causal sense as "to have a share in any act or effect." Likewise, the word "contributing" is defined as something that "has a part in producing an effect." We, therefore, hold that in an automobile negligence case, an expert witness, whether an investigating police officer or another expert, may not state his opinion as to what actions of the parties, if any, contributed to the collision or as to who was at fault in causing the collision.

---

2. Although Sgt. Burford offered testimony of little, if any, value to the plaintiffs, their able counsel, as a matter of trial strategy, called him as a witness, knowing that failure to do so might not sit well with the jury and that defense counsel would surely call him.

This court holds that the trial court committed prejudicial error in receiving into evidence, over plaintiffs' objection, Sgt. Burford's challenged testimony. In addition to *Lollis,* the following authorities are in accord with this ruling: *Zimmer v. Miller Trucking Co., Inc.,* 743 F.2d 601 (8th Cir.1984); *Buchanan v. Brandt,* 168 Colo. 138, 450 P.2d 324 (1969); *Weng v. Schleiger,* 130 Colo. 90, 273 P.2d 356 (1954); *Turbert v. Mather Motors, Inc.,* 165 Conn. 422, 334 A.2d 903 (1973); *Gringer v. Dattilo,* 81 Ill.App.2d 244, 225 N.E.2d 408 (1966); *Koch v. Greenwood,* 149 Ind.App. 457, 273 N.E.2d 568 (1971); *Lee v. Dickerson,* 133 Ind.App. 542, 183 N.E.2d 615 (1962); *Bornn v. Madagan,* 414 N.W.2d 646 (Iowa App.1987); *Kennedy v. Hageman,* 704 S.W.2d 656 (Ky.App.1985); *Rettler v. Ebreck,* 71 N.W.2d 759 (N.D.1955); *Gabus v. Harvey,* 678 P.2d 253 (Okla.1984); *Hubbard v. Coates,* 444 P.2d 204 (Okla.1968); *French v. Barrett,* 84 Or.App. 52, 733 P.2d 89 (1987); *Watkins v. Ebach,* 291 N.W.2d 765 (S.D.1980). See, generally, 38 A.L.R.2d 13 (Admissibility or opinion evidence as to cause of accident, §§ 22–24); see also, 69 A.L.R.2d 1148 (Admissibility of report of police or portions of report as to cause of or responsibility for accident). *Contra: Hanson v. Waller,* 888 F.2d 806 (11th Cir. 1989); *Frase v. Henry,* 444 F.2d 1228 (10th Cir.1971); *Estate of Hunt v. Board of Com'rs,* 526 N.E.2d 1230 (Ind.App.1988); *Wollaston v. Burlington Northern, Inc.,* 188 Mont. 192, 612 P.2d 1277 (1980); *Pachek v. Norton Concrete Co.,* 160 Mont. 16, 499 P.2d 766 (1972); *Sitaras v. James Ricciardi & Sons, Inc.,* 154 A.D.2d 451, 545 N.Y.S.2d 937 (1989); *Louder v. DeLeon,* 754 S.W.2d 148 (Tex.1988); *Dawson v. Casey,* 178 W.Va. 717, 364 S.E.2d 43 (1987).

Defendants argue that even if the trial court erred in receiving the challenged testimony of Sgt. Burford, as this court has held, plaintiffs are not entitled to a new trial because they did not make a submissible case. In *Grippe v. Momtazee,* 696 S.W.2d 797 (Mo. banc 1985), a wrongful death action for medical malpractice, the jury returned a verdict in favor of defendants, and plaintiff appealed. On appeal, the defendants argued that plaintiff failed to make a submissible case. Our supreme court held that the submissibility of plaintiff's case was not an issue on the appeal. 696 S.W.2d At 799 the court said:

Appellant could not raise or preserve the naked question of submissibility because the case had been submitted as appellant had requested. Defendants-respondents could not raise the naked question of submissibility because of their favorable jury verdict resulting from the submission. Neither party was aggrieved by the submission and neither party had standing to challenge submissibility. Only after a favorable finding for appellant on one or more of plaintiff-appellant's alleged errors could the court of appeals reach the question of submissibility—a question inherent in deciding whether the error found by the appellate court merits reversal or remand for new trial. *Cf.* Rule 84.14.

On retransfer, the court of appeals should examine the alleged errors and then, if warranted, address the question of submissibility.

Cases in the wake of *Grippe* have held that where, as here, the appellate court has made a favorable finding for plaintiff on one of plaintiff's alleged errors, it may, if warranted, address the question of submissibility. *Steenrod v. Klipsch Hauling Co., Inc.,* 789 S.W.2d 158, 165 (Mo.App.1990); *Lane v. Amsted Industries, Inc.,* 779 S.W.2d 754, 756 (Mo.App.1989); *Baltzell v. Van Buskirk,* 752 S.W.2d 902, 908 (Mo. App.1988); *Loomstein v. Medicare Pharmacies, Inc.,* 750 S.W.2d 106, 111 (Mo.App. 1988); *White v. Thomsen Concrete Pump Co.,* 747 S.W.2d 655, 660–661 (Mo.App. 1988); *Brown v. Shawneetown Feed & Seed Co.,* 730 S.W.2d 587, 589 (Mo.App. 1987); *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872, 876 (Mo.App. 1985). Under the foregoing authorities, this court now examines defendants' claim that plaintiffs did not make a submissible case and, for the reasons which follow, agrees with defendants.

The only assignment of negligence which plaintiffs' verdict-directing instruction, Instruction 7, submitted to the jury was the following: "Second, defendants' truck was

on the wrong side of the road, and Third, defendants were thereby negligent, and Fourth, as a direct result of such negligence Brenda Kay Ayers died."

■ In response to defendants' argument of non-submissibility, plaintiffs say: "Plaintiffs offered evidence that had [Chitwood] not purposely swerved to the left the collision could have been avoided." The only source for plaintiffs' statement was the testimony of John Bentley, a professional engineer who practices in the field of accident reconstruction and did not witness the collision. Bentley testified that in his opinion if Chitwood had not steered to the left, crossing the center line, the accident "could" have been avoided. Plaintiffs cite no Missouri case supporting the sufficiency or even the admissibility of that testimony in an action of this type. In *Wack v. F.E. Schoenberg Mfg. Co.*, 331 Mo. 197, 53 S.W.2d 28, 31 (1932), the court said that an expert's opinion, even if admissible, "as to what might or could happen did not make out a submissible case"; and that "there must be evidence that it would or did happen."

In *Rose v. Fague–Prouhet*, 701 S.W.2d 509 (Mo.App.1985), there was a dispute between the parties upon the respective movements of vehicles prior to the collision. Plaintiffs adduced a "qualified expert in the field of automobile engineering." The court of appeals held that the trial court properly allowed the expert to testify about stopping distances and turning radii and "properly excluded the expert's opinion of how the accident occurred since by his testimony his opinion was based solely upon photographs." *Id.* at 512. The court pointed out that the photographic evidence was before the jury, which possessed the knowledge necessary "to accurately place the vehicles" prior to the accident and that the trial court did not abuse its discretion in rejecting the opinion testimony of plaintiffs' expert. *Id.*

Bentley used a diagram to summarize his findings. According to the diagram, which was received into evidence, the Dodge was completely in the westbound lane, that is, on the wrong side of the road, until it was 58 feet from the point of impact and only .78 seconds prior to the point of impact. The diagram showed that the tractor-trailer unit was completely in the westbound lane when the front of it was 118 feet and 1.76 seconds from the point of impact. It had been in that lane up to that time. The initial movement, according to Bentley, of the tractor-trailer unit toward the eastbound lane, took place when it was 47 feet and .78 seconds from point of impact. Since, according to Bentley's testimony, the Dodge was still totally in the westbound lane at that time, Chitwood could not be found negligent in not continuing forward in the westbound lane during that interval of .78 seconds.

The portion of Bentley's testimony on which plaintiffs rely was not admissible. In referring to Bentley's diagram, this court does not imply that all of the data contained in it were admissible. Even under the minority view of authorities which might permit that type of testimony, it was not sufficient, and the assignment of negligence submitted in Instruction 7 was not supported by the evidence.

The judgment is affirmed.

SHRUM, P.J., concurs in part and dissents in part and files concurring and dissenting opinion.

MONTGOMERY, J., concurs.

SHRUM, Presiding Judge, concurring in part and dissenting in part.

I concur in the well-reasoned determination of the majority that the trial court prejudicially erred in receiving Sgt. Burford's challenged testimony into evidence. I also concur in the conclusion that the plaintiffs' witness Bentley's opinion testimony was not admissible [1]. I respectfully dissent from the determination that the plaintiffs did not make a submissible case.

It is well settled that "the *presence* of a motor vehicle on the wrong side of the road at the time of collision is, of itself, suffi-

1. Specifically, I refer to the testimony from Bentley which is summarized in the plaintiffs' brief as follows: "Plaintiffs offered evidence that had [Chitwood] not purposely swerved to the left the collision could have been avoided."

cient to create an inference of negligence." *Friederich v. Chamberlain,* 458 S.W.2d 360, 365 (Mo.banc 1970) (emphasis in original); *Holmes v. Gamewell,* 712 S.W.2d 34, 36 (Mo.App.1986). A vehicle's presence on the wrong side of the road may be excusable, but the driver has the burden of proving justification. *Friederich,* 458 S.W.2d at 366; *Holmes,* 712 S.W.2d at 36.

To illustrate acceptable excuses or justification, the *Friederich* court quoted, with approval, the following passage from *Miles v. Gaddy,* 357 S.W.2d 897, 902 (Mo. banc 1962):

"Section 304.015, subd. 2, RSMo 1959, V.A.M.S., provides that upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway with these exceptions: (1) when overtaking and passing another vehicle, (2) when a vehicle is making a lawful left turn, (3) when the right half is closed to traffic because of construction or repair, and (4) upon a roadway designated for one-way traffic. Laws 1953, p. 587, § 304.020. Under similar statutes, the cases have also recognized 'excuses' or 'excusable violations' which appear to be of a sort that could not be avoided in the exercise of the highest degree of care as imposed by § 304.010 upon all operations of a motor vehicle. In this category are sudden and unexpected brake failure, blowout of a tire and non-negligent skid."

458 S.W.2d at 365 (citations omitted).

Attempting to avoid a collision also is possible justification for the presence of a motor vehicle on the wrong side of the road. *Libby v. Hill,* 687 S.W.2d 264, 267[9] (Mo.App.1985). Although a variety of circumstances might excuse a motor vehicle operator who drives on the wrong side of the road, "his presence there is sufficient to present an issue of negligence, with his excuse or reason a matter for the jury's consideration." *Friederich,* 458 S.W.2d at 365 (quoting *Hodge v. Goffstein,* 411 S.W.2d 165, 169 (Mo.1966)). "The jury must decide whether such justification is adequate to excuse negligence." *Holmes,* 712 S.W.2d at 36.

The evidence was undisputed that the defendants' truck was on the wrong side of the road when the crash occurred. The defendants' evidence was that the truck was on the wrong side of the road because the driver was trying to avoid a collision with the decedent's motor vehicle. Whether the defendant truck driver was in any way negligent in being on the wrong side of the road or whether he was fully justified by an attempt to avoid the collision was a question for the jury. To hold otherwise contradicts the holding of *Friederich* and its progeny.

This belief is buttressed by the Committee Comment (1978 Revision) to MAI 17.13 (1991):

The law regarding the effect of skidding evidence in a case involving a motor vehicle accident on the wrong side of the road has been substantially revised by *Friederich v. Chamberlain,* 458 S.W.2d 360 (Mo. banc 1970). **If the evidence shows that defendant is on the wrong side of the road, plaintiff is entitled to go to the jury.** Skidding is a circumstance which the jury can consider in connection with all other facts and circumstances in deciding whether defendant was negligent. (Emphasis added.)

Under the cases cited above, this Committee Comment should be read to apply to cases involving evidence that the defendant was on the wrong side of the road in an attempt to avoid a collision.

Without commenting on the strength of the evidence which supports the defendants' justification for their vehicle's being on the wrong side of the road, the fact remains that it was there when the collision occurred. Because the evidence supports the assignment of negligence in Instruction 7, I would reverse and remand for a new trial.