**Manuel GUZMAN, Respondent,**

v.

**James M. HANSON, Appellant.**

No. 73995.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 23, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 6, 1999.

---

John R. Geiss, Hayes & Balfour, Creve Coeur, for appellant.

James S. Collins, II, Law Offices of James S. Collins, II, Camala Collins Francis, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, James M. Hanson ("defendant"), appeals the judgment of the Circuit Court of the City of St. Louis granting respondent's, Manuel Guzman's ("plaintiff"), motion for a new trial based upon the trial court's reconsideration of its failure to sustain one of plaintiff's objections during trial.[1] We reverse and remand for reinstatement of the jury verdict.

On June 24, 1994, plaintiff and defendant were involved in a vehicular accident on Highway 70 at a point east of the Lucas & Hunt overpass in St. Louis County, Missouri, at approximately 3:00 a.m. Both vehicles were travelling eastbound.

Plaintiff filed a suit against defendant in March, 1996, alleging negligence on the part

---

1. Plaintiff's motion for a new trial was also granted upon the basis of an alleged instructional error. Defendant appeals upon this ground as well. However, we need not address this issue, as plaintiff concedes in his brief that "[a] review of the case law cited by defendant in defendant's brief supports defendant's contention ... " on this issue.

**552**

of defendant which caused the collision. The case was heard on December 10, 11 and 12, 1997.

Plaintiff testified at trial. On the day prior to the accident, plaintiff had arisen at approximately 7:00 a.m. and proceeded to go to work. He had gotten off work that day at approximately 6:00 to 6:30 p.m. and proceeded to St. Charles, Missouri to assist a friend in installing floor tiles at the friend's house. During the course of the evening, plaintiff admitted to drinking five to six beers between the time he arrived, at approximately 7:15 p.m., and midnight. He left his friend's house at approximately 1:45 a.m., intending to return to his home in South St. Louis.

Plaintiff testified he took Highway 70 eastbound. Plaintiff explained as he was approaching the Lucas & Hunt overpass, his car was travelling at approximately fifty-five miles per hour in the lane furthest to the left and his car was operating normally. According to plaintiff, shortly after coming under the Lucas & Hunt overpass, he noticed his radio starting to cut off and come back, with his lights getting dimmer and the speed of his automobile decreasing. He stated he moved to the center lane, then to the far right lane, intending to get onto the shoulder of the highway. As he was straddling the shoulder and the right lane of the highway, plaintiff was struck in the rear by the tractor-trailer truck driven by defendant. Plaintiff estimated that at the time of the collision, the speed of his vehicle was approximately twenty miles per hour. He said he never saw the tractor-trailer before it hit him. After the collision, plaintiff immediately exited his car and walked down to the driver's side of the truck driven by defendant. He received a blanket from defendant and believed he passed out while waiting for assistance to arrive.

At the scene of the accident, plaintiff was treated by firefighter/paramedic Greg Wood. Wood worked for the Normandy Fire Protection District as a fireman and a paramedic for approximately eighteen years. Wood testified he arrived at the scene at approximately 3:20 a.m. Wood testified plaintiff did little talking at the scene of the accident, although he did state he had a pain in the center of his forehead. He noted plaintiff's speech was slow and sluggish. Plaintiff had a laceration to his forehead. A cervical collar was placed around the plaintiff and he was taken to DePaul Hospital. Wood testified plaintiff's pupils were equally reactive to light; he was refusing to answer questions; he was uncooperative and appeared to be refusing to talk. Wood further testified plaintiff had a very strong odor of alcohol on his breath. Wood explained his assertion that plaintiff had "a very strong" smell of alcohol on his breath was significant in that he categorizes the alcohol ingestion of accident victims into four categories, with the term "very strong" smell of alcohol being just shy of unconsciousness.

The Normandy paramedics took plaintiff to DePaul Hospital, where he stayed overnight and was released the following day. While at the DePaul Hospital, a blood-alcohol test was run on plaintiff which showed a blood-alcohol level of .191 per the hospital records. The records were presented to Dr. Mary Case by defendant for her analysis of the blood-alcohol test as it related to plaintiff's assertion he had five to six beers between the hours of 7:00 p.m. and midnight. Further, Dr. Case was asked to offer her opinion with regard to the effects of the blood-alcohol level on plaintiff's ability to operate his vehicle. Dr. Case offered the opinion, plaintiff had considerably more to drink at his friend's house in St. Charles than the five or six beers he claims. Dr. Case testified that based upon the level of alcohol ingested by plaintiff, his visual acuity, judgment, reaction time, and emotional state would be severely and negatively influenced. Moreover, Dr. Case explained plaintiff almost certainly had blurred vision and was seeing two of every object he encountered.

Additionally, the investigating officer, Officer John Colombin wrote in his report and testified at trial that upon examining plaintiff's car, he found the ignition switch was on and the lights were turned off.

Defendant testified at trial. Defendant said at the time of the accident he had been a truck driver for his current employer for approximately three years. He was proceeding from the Kansas City area to Atlanta,

Georgia. He had taken a break at the Forestill [sic] truck stop at approximately 5:00 p.m. on the afternoon before the accident. Defendant arose from sleeping at approximately 1:00 a.m., inspected his vehicle, noted that his vehicle was in proper working order, and left the truck stop at approximately 1:30 to 2:00 a.m., heading eastbound on Highway 70. The gross weight of defendant's vehicle was 65,000 pounds. Defendant stated he always drove his vehicle in the far right lane of the highway and always used his low beam headlights in order to keep from blinding oncoming traffic. Defendant described the traffic on the morning of the collision as being light.

Defendant testified that as he was approaching the Lucas & Hunt overpass, he was travelling approximately fifty miles per hour. He explained that after passing under the Lucas & Hunt overpass, he noticed his headlights were reflecting off of a car which was proceeding slowly, straddling the shoulder and the far right lane. Defendant estimated that when he first saw the car driven by plaintiff, it was approximately 200 to 300 feet in front of him. He noticed no tail lights or head lights. Defendant initially applied his brakes in a normal manner in order to slow down, looked into the mirrors of his truck to ensure there was no traffic to his left, signaled and proceeded to begin to move his vehicle to the left to go around plaintiff's vehicle. Defendant explained the time needed for him to check his three mirrors and return his attention to the front of his vehicle was approximately three seconds. Defendant testified that upon returning his attention to the front of his vehicle, he noticed the car driven by plaintiff, instead of now straddling the shoulder and the far right lane, was moving left with him toward the center lane. Defendant indicated he turned his wheel more severely and applied the brakes in an emergency manner, thus "locking them down" and causing the sensation of the trailer tires "hopping or jumping." As a professional truck driver, he knew the sensation of wheel jumping indicated the wheels of the trailer were sliding and laying marks. Defendant struck plaintiff's vehicle, causing plaintiff's car to veer to the right, off the shoulder of the road. After impact, defendant pulled his vehicle to the shoulder and called for help on the CB radio, got out of his truck, and noticed plaintiff was walking up the driver's side of his truck, stating "You hit me." The jury also heard testimony from defendant that upon approaching plaintiff after the accident, he was able to smell alcohol on plaintiff's breath from approximately five to six feet away. Defendant further testified he went to get a blanket for plaintiff and placed it around him, whereupon plaintiff apparently swooned or fainted. Defendant stayed with plaintiff until the police arrived.

Near the conclusion of the questioning of defendant by his attorney, the following exchange took place:

[Defendant's counsel]: Okay. [Defendant], keeping in mind that three years have gone by since that accident, looking back on it, are there any actions that you took on the night or the morning of June 24, 1994, that you believe were unsafe?

[Plaintiff's counsel]: Objection. It's irrelevant and invades the province of the jury.

[The Court]: Overruled.

[Plaintiff's counsel]: This witness cannot give an opinion whether his driving was safe or unsafe.

[The Court]: Overrule the objection. It's (sic) a professional truck driver. Overrule the objection.

[Defendant's counsel]: You may answer.

[Defendant]: No, I do not.

[Defendant's counsel]: Are there any actions that you took or failed to take that you think – are there any actions that you knew at the time to take to avoid the accident that you did not do?

[Plaintiff's counsel]: Same objection. Invades the province of the jury.

[The Court]: Overruled.

[Defendant]: No, I did not.

[Defendant's counsel]: I have nothing further.

The case was given to the jury at 11:38 a.m. on December 12, 1997. The jury returned its verdict at 12:05 p.m., assessing 100% of fault to plaintiff and 0% of fault to defendant.

Plaintiff filed his motion for a new trial, arguing, inter alia, the trial court erred in overruling plaintiff's objection to the line of questioning by defendant's attorney regarding defendant giving his opinion as to whether his conduct in the operation of his truck on the morning of the accident was safe or unsafe. In her order of February 6, 1998, the trial court sustained plaintiff's motion for a new trial. The grounds given for the trial court's ruling were limited to defendant's instruction number seven[2] and to the trial court's overruling of plaintiff's objections to defendant being asked whether any of defendant's actions on the morning of the accident were unsafe. This appeal followed.

■ Defendant contends the trial court abused its discretion in granting plaintiff's motion for a new trial based upon the court's reconsideration of its overruling of plaintiff's objection to defendant commenting on whether his actions were safe. Defendant argues that he, as a professional truck driver, could offer such opinion and such opinion was not prejudicial to plaintiff. While we disagree with defendant that he could properly offer such opinion, we agree with defendant such opinion was not prejudicial to plaintiff.

■ "When, as here, the trial court grants a new trial, 'we must indulge every reasonable inference favorable to the trial court's ruling, and we may not reverse unless there has been a clear abuse of discretion[,]'" despite the fact we may believe, based on the cold record, that we might have ruled differently as a trial court. *Farley v. Johnny Londoff Chevrolet, Inc.,* 673 S.W.2d 800, 803 (Mo.App. E.D.1984) (quoting *Penn v. Hartman,* 525 S.W.2d 773, 775 (Mo.App.St.L.D. 1975)). An abuse of judicial discretion occurs "when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Richardson v. State Hwy. & Transp. Com'n,* 863 S.W.2d

876, 881 (Mo.banc 1993). "While appellate courts are more liberal in upholding the grant of a new trial than in denying it, the error complained of still must be prejudicial to the party seeking the new trial." *Giddens v. Kansas City Southern Ry. Co.,* 937 S.W.2d 300, 303 (Mo.App. W.D.1996). The error complained of here is that the trial court erred in overruling plaintiff's objection to the defendant being asked by his attorney for his opinion concerning the safety, or lack thereof, of his actions leading up to the collision.

■ Upon review, we find the grant of plaintiff's motion for a new trial to have been an abuse of discretion based on the evidence presented. On appeal, defendant contends his opinion testimony was admissible as expert testimony since he is a professional truck driver. We disagree. If the subject on which the expert intends to testify is one which lay jurors are not inclined to be familiar with, so the opinion would be helpful to the jury, it is not a valid objection that the expert's opinion goes to the ultimate issue for the jury to decide, or that the expert's opinion invades the province of the jury. *Eagleburger v. Emerson Elec. Co.,* 794 S.W.2d 210, 237 (Mo.App. S.D.1990) (citation omitted). "On the other hand, if the subject is one of everyday experience, where the jurors are competent to decide the issues, then opinion testimony is properly rejected." *Id.*

■ Moreover, the courts of this state have held that expert witnesses' opinion testimony "should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." *Stucker v. Chitwood,* 841 S.W.2d 816, 819 (Mo.App. S.D.1992) (quoting *Sampson v. Missouri Pacific R. Co.,* 560 S.W.2d 573, 586 (Mo.banc 1978)). The *Stucker* court explained the "essential test of admissibility of expert opinion evidence is whether it will be helpful to the jury." *Id.* In other words, despite the fact a witness may be an expert and have an opinion, that alone is insufficient for the opinion to be admissible; in addition, scientific, technical or other specialized knowledge must also aid the trier

**2.** As noted in footnote 1, we need not address this ground.

of fact to understand the evidence or to determine a fact issue. *Id.;* RSMo section 490.065 (1994).

At trial, defendant gave his opinion that his actions on the morning of the accident were safe. We are thus faced with the question of whether defendant's scientific, technical or other specialized knowledge would assist the jury to understand the evidence in the case or to determine a fact issue which would make defendant's testimony admissible. In *Stucker,* which, like our case, concerned a suit based on an accident involving a car and a tractor-trailer unit (an 18–wheeler), the court was concerned with the admissibility of the opinion testimony of the investigating officer with regard to the defendant's lack of fault in causing the accident at issue. *Stucker,* 841 S.W.2d at 817–823. The *Stucker* court stated, "[i]n this era of widespread highway travel and numerous highway collisions, a jury, usually composed of adult drivers for the most part, is capable of reaching its own conclusions with regard to fault and degree of fault in a case of this type." *Id.* at 820.

Accordingly, just as the *Stucker* court found the "challenged testimony was of no aid to the jury in understanding the evidence or determining the facts in issue[,]" *Id.,* so also do we find the contested testimony of defendant was of no assistance to the jury in understanding the evidence or determining the facts in issue. Thus, we find the trial court erred in admitting defendant's opinion testimony concerning the ultimate issue in this case, whether defendant drove his truck safely, as it invaded the province of the jury and the jury's right to draw inferences and conclusions from the facts of the case.

■ However, as noted earlier, "the error complained of still must be prejudicial to the party seeking the new trial." *Giddens,* 937 S.W.2d 300, 303 (Mo.App. W.D.1996). Defendant contends the admission of his opinion testimony was not prejudicial to plaintiff. In response, plaintiff argues he was prejudiced by the admission of defendant's opinion testimony concerning the ultimate issue of fault in this case. Plaintiff further argues this prejudice was further compounded when the trial court endorsed defendant as a "professional truck driver" in the presence of the jury. We agree with defendant.

We note that by the time defendant gave his challenged opinion testimony, the jury had already heard from five witnesses. The jury had already heard from plaintiff who testified his car began to lose power and slow down shortly after passing under the Lucas & Hunt overpass, with his lights getting dimmer.

The jury had also already heard from Officer John Colombin that defendant displayed a commercial driver's license; his examination at the scene of the accident showed skid marks on the highway consistent with defendant's version of how the accident occurred; and the headlights in plaintiff's automobile were in the "off" position, while the ignition was in the "on" position.

Moreover, the jury had already heard from Dr. Case that plaintiff was seriously intoxicated on the morning of the accident, having a blood-alcohol level of .191, nearly twice the legal limit, and that it was not possible for him to safely drive an automobile. Dr. Case explained plaintiff almost certainly had blurred vision and was seeing two of every object he encountered.

The jury had furthermore heard from paramedic Greg Wood that plaintiff appeared to be refusing to talk and had a very strong odor of alcohol on his breath. Wood further testified that his assertion that plaintiff had "a very strong" smell of alcohol on his breath was significant in that he categorizes the alcohol ingestion of accident victims into four categories, with the term " very strong" smell of alcohol being just shy of unconsciousness.

The jury had also already heard from defendant that he noticed a smell of alcohol on plaintiff from several feet away. Defendant described his actions from the time he left the Forestill [sic] truck stop to the time he wrapped plaintiff in a blanket and waited for the police to arrive at the accident scene. He explained how he had been a tractor-trailer truck driver for the company for whom he was driving for three years at the time of the accident. Only after describing in detail the actual actions he took on the

morning of the accident was the question asked by defendant's attorney as to whether he took any action on that morning which he believed to be unsafe. Plaintiff's attorney objected, and the trial court overruled that objection, noting defendant was a professional truck driver.

Based on the foregoing evidence, we find plaintiff suffered no prejudice as a result of defendant's challenged opinion testimony. Therefore, we further find defendant's challenged opinion testimony, despite its inadmissibility, was not so prejudicial as to warrant the grant of a new trial and the trial court abused its discretion in so granting a new trial on this basis.

Accordingly, we reverse the judgment of the trial court and remand for reinstatement of the jury verdict.

HOFF, P.J., and RHODES RUSSELL, J., concur.