Gregory A. LOWDERMILK and
Mary Catherine Lowdermilk,
Plaintiffs/Appellants,

v.

VESCOVO BUILDING AND REALTY
COMPANY, INC., Gary Vescovo, Robert Vescovo, Gundaker Real Estate
Company, Inc., Larry D. Wilson, Jr.,
and Beth Gundaker–Lisk, Defendants/Respondents.

No. ED 79055.

Missouri Court of Appeals,
Eastern District,
Division One.

June 18, 2002.

Application for Transfer to Supreme
Court Denied Aug. 7, 2002.

Case Transferred to Supreme Court
Sept. 24, 2002.

Case Retransferred to Court of
Appeals Dec. 24, 2002.

Original Opinion Reinstated
Jan. 9, 2003.

Don M. Downing, Sandra J. Wunderlich, Carrie Mulholland Brous, Stinson, Mag & Fizzell, P.C., St. Louis, MO, for appellants.

Beth C. Boggs, Boggs, Backer & Bates, L.L.C., St. Louis, MO, Robert C. Jones, Jones, Korum, Waltrip, & Jones, Clayton, MO, for respondents Vescovo Bldg. & Rlty. Co., Robert and Gary Vescovo.

Paul F. Devine, Vatterott, Shaffar & Dolan, P.C., Maryland Heights, MO, for respondents Gordon A. Gundaker Real Estate Co., Beth Gundaker–Lisk and Larry Wilson, Jr.

KATHIANNE KNAUP CRANE, Judge.

Plaintiff homeowners were awarded $140,000 in actual damages and $260,000 in punitive damages against defendant home-builders and realtors for failure to disclose that the foundation of the home they had purchased for $560,000 had not been damp-proofed. At trial, evidence was admitted with respect to numerous defects in the house, the cost to repair all of those defects, and the diminution in market val-

ue as a result of those defects. However, the case was only submitted on theories relating to defendants' failure to disclose that the foundation had not been damp-proofed, including a theory of negligence per se based on a violation of a disclosure provision of the real estate licensing statute. The trial court ordered a new trial on the grounds that the jury was allowed to consider damages not proximately caused by the failure to damp-proof and that the submission of negligence per se was improper. Plaintiffs appeal. We affirm and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a new home in Webster Groves, Missouri. The home was built by defendant Vescovo Building and Realty Company, Inc., of which defendants Gary Vescovo and Robert Vescovo were the principals. The home was originally listed for sale by Vicki Kirk, a real estate salesperson for Janet Mcafee Real Estate Co. On April 21, 1998 Gene Kiernan, a resident in the neighborhood where the home was being built, sent a letter to Ms. Kirk that advised her of problems he observed during the construction of the house, including problems with the exterior wall, roofing, windows, showers, bathtubs, decks/porches, and interior drywall with the house. Specifically, Mr. Kiernan reported that he did not observe that the foundation had been waterproofed:

> I also did not see any waterproofing on the outside of the foundation. There were places where I would see down as far as twelve inches below the construction grade; and no waterproofing. The bituminous coatings used for this purpose normally are applied to the outside of the foundation walls from the footings up to the final grade line to prevent ground water and moisture from entering the basement by weeping through the concrete foundation walls. Verifications of this condition can be done by removing enough of the backfilled earth to establish the absence or presence of such coatings and, if present, how high up the walls they have been applied.

Mr. Kiernan did not disclose the basis of his expertise or write the letter on his business stationary.

On May 21, 1998, Mr. Kiernan sent the builder defendants a copy of his letter to Ms. Kirk. Between April, 1998 and September, 1998, Ms. Kirk informed a broker at Janet Mcafee and a representative of Prudential Mortgage Company, who represented some prospective buyers, that she received a letter that outlined serious concerns with the property. The prospective buyers made an offer to purchase the house, but did not ultimately purchase it because the parties were "too far apart" on price and other amenities in the home. Ms. Kirk's listing agreement with Vescovo Building expired before the house was sold. Ms. Kirk did not disclose the contents of Mr. Kiernan's letter to the listing agent or agency that replaced her.

On September 18, 1998 defendant Gundaker Real Estate Company, Inc., entered into a listing agreement on the property. Defendant Beth Gundaker–Lisk was the listing agent for the home. Defendant Larry Wilson, a Gundaker agent in its new homes division, was in charge of marketing the home to other realtors so that those realtors would bring prospective buyers to the home. Both Mr. Wilson and Ms. Gundaker–Lisk were listed on the multiple listing service as agents to contact about the property.

After Gundaker became the listing agency, Mr. Kiernan telephoned Mr. Wilson. He asked Mr. Wilson about Ms. Gundaker–Lisk and Mr. Wilson told him that he was marketing the property with Ms. Gun-

daker–Lisk. Mr. Wilson reported Mr. Kiernan's phone call to Gary Vescovo. Mr. Kiernan testified that, on September 1, 1998, he sent a photocopy of the letter he had sent to Ms. Kirk to Ms. Gundaker–Lisk, accompanied by a note on "Kiernan Fine Construction Service" letterhead.

In October, plaintiffs, Gregory Lowdermilk and Mary Catherine Lowdermilk, viewed the house on several occasions. At the end of that month they and their real estate agent, Stacie Fryear of Ann Noonan, Inc., met with Gary Vescovo and Robert Vescovo at the home. Both Gary Vescovo and Robert Vescovo told plaintiffs that the house was well built and had no problems. Mr. Wilson was also present at this meeting, but did not say anything about the house.

A few days after the meeting, plaintiffs made an oral offer through Ms. Fryear to purchase the house for $550,000, which was rejected. On October 26, 1998, plaintiffs made a written offer, prepared by Ms. Fryear, to purchase the house for $560,000. On October 27, 1998, Gary Vescovo accepted the offer and signed the contract as the seller.

Plaintiffs had a mechanical inspection made of the home before closing. Plaintiffs walked along with the inspector throughout his inspection. After the inspection, they were told that there were no major problems with the house. On December 18, 1998 plaintiffs closed on the house and paid $560,000 as contracted.

After they closed on the home and moved in in mid-December, 1998, plaintiffs experienced a few problems with the home. In February, 1999 plaintiffs received a letter from Mr. Kiernan, in which he informed them he was a neighbor and a designer and builder of homes. He described multiple construction problems with the home. He reported that he witnessed various "construction techniques being used that were ... so egregious just in violation of standard practice." In the letter, Mr. Kiernan informed plaintiffs that one of the problems was that the foundation had not been properly damp-proofed. A week after receiving the letter from Mr. Kiernan, plaintiffs met with him. At that meeting, Mr. Kiernan gave plaintiffs copies of the letter he had sent to Ms. Kirk and Ms. Gundaker–Lisk.

After plaintiffs had the February, 1999 meeting with Mr. Kiernan, they told Robert Vescovo and Gary Vescovo of their concerns, and Robert Vescovo and Gary Vescovo went to plaintiffs' house to meet them. Robert Vescovo and Gary Vescovo could not provide documentation to plaintiffs to show that they had damp-proofed the foundation. Plaintiffs asked them to take the house back, but they refused.

Within the first eighteen months after they moved in, plaintiffs noticed numerous other problems with the home. For example, the shower leaked, the front porch began to slope, the floor in the attached garage separated from the wall, a bathroom floor also separated from the wall, some of the trim on the interior of the house became detached from the wall, some of the floor boards in the house became loose, and all of the gutters overflowed in the rain.

On May 11, 1999, plaintiffs filed a lawsuit against Vescovo Building and Realty Company, Robert E. Vescovo, and Gary Vescovo (the defendant builders) and Gordon A. Gundaker Real Estate Company, Ms. Gundaker–Lisk, and Mr. Wilson (the defendant realtors). Plaintiffs sought damages from the defendant builders under theories of breach of implied warranty in a new home, negligence per se, intentional misrepresentation, fraudulent omission; negligent misrepresentation, negligent omission, and unjust enrichment.

Plaintiffs sought damages from the defendant realtors under theories of negligence per se, unjust enrichment, fraudulent omission, and negligent omission.

At trial, Matthew Foreman, a registered architect who performs inspections for real estate owners, testified as an expert to the problems with the home. He identified numerous defects. The basement stairs were not properly framed; there was debris in the concrete foundation; there was a piece of wood inside the concrete; the beams that support the framing for the first floor were not properly grouted; the first floor framing application was not standard; the shower in the master bath was leaking; the framing area underneath the pantry, powder room, and a portion of the laundry room on the first floor was not properly insulated; and the anchor bolts that keep the house attached to the foundation in an earthquake were not tightened. There were "nail pops and gaps" in the trim; the floorboard was pulling away from the trim; the floor slab was sinking, the bathroom floor was not level; the framing in the garage was insufficient to properly support the roof; and the wall between the house and the garage was not a sealed, fire-safe wall. The vent was not properly supported; the plumbing vent that goes through the roof was not sealed; a "baffle" was not installed in between the roof and insulation; and there was a "question about [the] integrity of the drip edge and the water and also the ventilation." Both of the two front porches were sinking; the vinyl siding was slipping out of place; there was a crack in the foundation; there was no roofing felt underneath the shingles and no "valley flashes in the valley" of the roof; there was no "drip edge" at the corner of the roof; and a "sizable gap" had opened between the roof decking and the trim.

Another problem was that the foundation of the house had not been damp-proofed. Mr. Foreman testified that a foundation that is not damp-proofed will allow water to penetrate the concrete, soak the foundation, and cause the walls to crack.

The building commissioner for City of Webster Groves, Michael Harney, who had inspected the home prior to plaintiffs' occupancy to determine whether or not the home complied with the Building Officials and Code Administrators (BOCA) code, testified that failure to damp-proof the foundation is a BOCA code violation. Mr. Harney did not determine whether or not the foundation of the home had been damp-proofed because, when he inspected the foundation, the concrete had not been poured. Mr. Harney further opined that, based on the information provided during the trial, the roof had two code violations because tar paper had not been placed under the roof and "valley flashes" had not been placed on the roof. In order for plaintiffs to sell the home, Webster Groves is obligated to ensure that all code violations are rectified.

Mrs. Lowdermilk also testified to the defects and problems plaintiffs experienced with the home. Mrs. Lowdermilk testified that plaintiffs did not feel that they could sell the home as a result of the code violations which were disclosed in Mr. Kiernan's letter.

Mr. Foreman testified that the cost to repair all of the defects to which he testified was $182,000. Mr. Foreman admitted on cross-examination that some items should be removed from the repair list because he was informed by plaintiffs' attorney that they would not "be pursued" in determining the cost of the repairs. His revised estimate of the total cost to make all repairs was $134,000.

Mr. Foreman also testified that the repairs resulting from the failure to damp-proof were:

Removing the patios, removing the front porches, excavating the yard, cleaning the concrete wall, cleaning the dirt off of it so you get a good bond with the sprayed-on material, spraying that material in, backfilling gravel and dirt around the foundation, releveling and finishing the grade and installing the grass seed, plantings, et cetera around the foundation, and also you would have to reconstruct the porches and the patios and the driveway that were removed during that process.

He testified that the cost to excavate the foundation, clean the concrete, apply waterproofing, and replace the patios was $27,800, and the lawn would be required to be re-graded and re-seeded, at an additional cost of $2,000.

Susan Schiff, a realtor, testified for plaintiffs as an expert to the fair market value of the home. She testified that the value of the home "as represented" at the time of purchase was $560,000, its purchase price. Ms. Schiff testified that the home's actual value at the time of purchase is determined by subtracting the cost of repairs and subtracting another ten to twenty percent of the cost of repairs for the loss of confidence or risk. In her testimony Ms. Schiff applied this process to a figure representing the cost to repair all of the reported damage to the home which was the original estimate of $182,000. As a result, she concluded that the actual value of the home was $339,410 which she computed by subtracting the cost of repairs ($182,000) and approximately ten to twenty percent of the cost of repairs ($18,000–$36,000), which she rounded, to approximate a difference of $220,000 from the $560,000 price as represented.

The case was submitted to the jury on a theory of intentional misrepresentation against the defendant builders (Count III) and a theory of negligence per se against defendant realtors (Count II). In both of these submissions the liability was limited to the failure to disclose the absence of damp-proofing.

Verdict directors 7, 8, and 9 submitted the liability of each of the builder defendants based on MAI 23.05, "Fraudulent Misrepresentations," modified to charge failure to disclose. (LF 305–07) Each instruction was in the following format:

Your verdict must be for Plaintiffs against Defendant if you believe:

First, Defendant [name] had superior knowledge whether the exterior of the foundation of the house at 118 Glen Road had been damp-proofed; and

Second, the exterior of the foundation of the house at 118 Glen Road had not been damp-proofed; and

Third, Defendant failed to disclose this information to Plaintiffs; and

Fourth, Plaintiffs did not know, and in the exercise of ordinary care could not have known, that the exterior of the foundation of the house at 118 Glen Road was not damp-proofed; and

Fifth, Plaintiffs' lack of knowledge of the failure to damp-proof the exterior of the foundation of the house at 118 Glen Road was material to their purchase of the house; and

Sixth, as a direct result of Defendant's failure to disclose that the exterior of the foundation of the house at 118 Glen Road had not been damp-proofed, Plaintiffs were damaged.

Verdict directors Nos. 10, 11, and 12, submitted the liability against each of the defendant realtors based on MAI 17.18, "Per Se Negligence—Violating Speed Limit."

Your verdict must be for Plaintiffs and against Defendant [name] if you believe:

First, Defendant [name] knew, or should have known, that the exterior of the foundation of the house at 118 Glen Road had not been damp-proofed; and

Second, this information would have been material to Plaintiffs' purchase of the house at 118 Glen road; and

Third, Defendant failed to disclose this information to Plaintiffs; and

Fourth, as a direct result of such conduct, Plaintiffs sustained damages.

The actual damage instruction was based on MAI 4.03 and directed the jury:

If you find in favor of the plaintiffs, then you must award plaintiffs such sum as you believe was the difference between the actual value of the house on the date it was sold to plaintiffs and what its value would have been on that date had the house been as represented by defendant.

All of the defendants objected to the actual damage instruction on the grounds that it allowed the jury to assess damages on all defects that were in evidence, rather than limiting the damages to those proximately caused by the failure to damp-proof the foundation. Vescovo Building and Realty Co. submitted its own instruction, which was adopted by all defendants, which limited damages to those proximately caused by the failure to damp-proof the foundation, which the trial court rejected. In addition, the court submitted punitive damages patterned after MAI 35.19 [Punitive Damages with two defendants where there is an apportionment of fault between defendants] and MAI 10.02 [Damages—

Exemplary—Negligence Constituting Conscious Disregard for Others] (modified).[1]

The jury returned a verdict in plaintiffs' favor against all defendants and awarded plaintiffs $140,000 in compensatory damages and $280,000 in punitive damages. The trial court entered judgment on the verdict. All defendants filed motions for judgment notwithstanding the verdict and/or for new trial.

The defendant builders' motion for new trial included the ground:

10(b). Instruction[s 7, 8, and 9] removed the issue of Plaintiff's ability to discover conditions upon reasonable inspection as the only condition submitted in Instructions 7, 8, and 9 was whether the Plaintiffs by the exercise of ordinary care could not have known of the lack of damp proofing. The Court then erred by allowing counsel for the Plaintiff to submit all damages. In essence, instructing the jury that if the Plaintiffs could not have known the house was damp proofed, all items presently wrong with the house were compensable damages. This is not the appropriate standard under Missouri law.

Paragraphs 2 and 10 of the defendant realtors' motion for new trial asserted:

2. The court erred in submitting instructions number 10, 11, and 12, Plaintiffs verdict directors based upon negligence *per se* under § 339.730, and in refusing Gundaker Defendant's proposed instruction A, based upon the legal standards set forth in *Dobbins v. Kramer,* 780 S.W.2d 717 (Mo.App.1989), for one or more of the following reasons:

a. Plaintiffs' verdict directing instructions against the Gundaker Defendants constitute an improper statement of the law in that Mis-

<hr>

1. All defendants challenged the use of MAI 10.02 as a punitive damage instruction in their respective motions for new trial. (LF 345, 354)

souri courts have not previously recognized § 339.730 as supporting a private claim, see generally *Bradley v. Ray*, 904 S.W.2d 302 (Mo. App.1995), and the courts have already stated that Chapter 339 RSMo. will not support such an action. *American Mortgage Investment Co. v. Hardin–Stockton Corporation*, 671 S.W.2d 283 (Mo.App. 1984);

b. Plaintiffs verdict directing instructions against the Gundaker Defendants constitute an improper statement of the law in that Missouri courts have required an element of scienter in order to prevail upon a claim for negligently failing to disclose certain facts. *Dobbins v. Kramer*, 780 S.W.2d 717 (Mo.App. 1989); and/or

c. Plaintiffs' verdict directing instructions either impose a duty of discovery and investigation upon the Gundaker Defendants which is specifically excluded under § 339.730(3) RSMo. or allow the jury to impute knowledge of the principal (the Vescovo Defendants) upon the agent (the Gundaker Defendants) thereby creating vicarious liability which is specifically excluded under § 339.810 RSMo. (1997)

10. [T]he jury was allowed to consider damage evidence ... which was not proximately caused by a failure to damp-proof the property as submitted in Plaintiffs' instructions numbered 10, 11, and 12.

The trial court denied the motions for judgment notwithstanding the verdict and granted the motions for new trial. The trial court granted the defendant builders' motion for new trial on the grounds specified in paragraph 10(b) of their motion. The trial court concluded that the verdict directing instructions 7, 8, and 9 limited the defendant builders' liability to the failure to disclose that the exterior of the foundation had not been damp-proofed, but the jury was allowed to consider other claimed defects in the home which were not submitted in the verdict directing instructions.

The trial court granted the defendant realtors' motion for new trial on the grounds raised in paragraphs 2 and 10 of their motion for new trial. The trial court found that Instructions Nos. 10, 11, and 12 were improper statements of liability and that the jury was allowed to consider damage evidence not proximately caused by a failure to damp-proof.

## DISCUSSION

■■■ Our review of the grant of a motion for new trial differs from the review of a denial of a motion for new trial. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 360 (Mo.App.1993). We are more liberal in upholding the grant of a new trial than the denial of a new trial. *Id.* When the trial court grants a new trial, we must allow every reasonable inference that favors the trial court's ruling, and we may not reverse unless there has been a clear abuse of discretion. *Guzman v. Hanson*, 988 S.W.2d 550, 554 (Mo.App.1999). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* If reasonable people can differ about the propriety of the action taken by the trial court, the trial court did not abuse its discretion. *Id.* Even when a new trial has been granted, the error complained of must be prejudicial to the party seeking the new trial. *Id.*

■■■ In reviewing a trial court's award of a new trial because of an erroneous

instruction, we determine if the instruction is erroneous as a matter of law upon the record presented, not as a matter within the discretion of the trial court. *Egenreither ex rel. Egenreither v. Carter*, 23 S.W.3d 641, 645 (Mo.App.2000). If the instruction is found to be erroneous, we defer to the discretion of the trial court, absent a showing of an abuse of this discretion, because the trial court has the best opportunity to determine the effect of any error. *Id.*

I. *Jury Consideration of Other Damage—All Defendants*

In their first four points, plaintiffs contend that the trial court erred in granting a new trial to all defendants because MAI 4.03 was the proper damage instruction and because they had the right to recover the difference in value between the actual value and the value as represented. They argue that the instructions did not allow the jury to consider other evidence of damage, that the damages awarded were supported by the evidence, and that the other evidence of damage was before the jury as a result of defendants' failure to object to that evidence or to request a withdrawal instruction, and that defendants therefore waived their right to limit plaintiff's recovery to the diminution in value resulting from the failure to damp-proof.

■ MAI 4.03 is the proper damage instruction when a plaintiff is suing for misrepresentation. MAI 4.03 (1969 New), Notes on Use (1981 Revision).[2] The appropriate measure of damages in a fraudulent misrepresentation case is the difference between the actual value of the property at the time the contract was entered into and the property's value had the representation been true. *Stephenson*

*v. First Missouri Corp.*, 861 S.W.2d 651, 659 (Mo.App. W.D.1993). Unlike MAI 4.01, the Notes on Use to MAI 4.03 do not indicate a situation in which this instruction may need to be modified. *Compare Carlson v. K–Mart Corp.*, 979 S.W.2d 145 (Mo. banc 1998); *Russell v. Terminal RR*, 501 S.W.2d 843 (Mo. banc 1973). However, there are times when an instruction may require modification to fairly submit damages. Rule 70.02(b).

■ In this case the verdict directing instructions required the jury to find damage as a direct result of the failure to disclose that the foundation had not been damp-proofed. However, the damage instruction, using the MAI 4.03 language, told the jury to award a sum representing the difference between the home's "actual value" on the date of sale and what its value would have been if "as represented." The "as represented" value was its sale price. There was evidence that the home's "actual value" on the date of sale had been reduced by numerous construction defects, in addition to the failure to damp-proof. Where there is evidence of other causes or conditions which have reduced the actual value, the instruction may require modification to fairly submit damages. *Moore v. Woolbright*, 645 S.W.2d 376, 377 (Mo.App. 1983); *Moore v. Woolbright*, 670 S.W.2d 190, 192 (Mo.App.1984).

■ Here the damage instruction was misleading because it did not direct the jury, in determining "actual value," to eliminate all reductions in value other than those resulting from the failure to disclose the lack of damp-proofing. It was error to give the damage instruction without modification.

---

**2.** We observe that the counts against the defendant realtors were for negligence per se.

The parties have not addressed this.

■ We next consider whether the damage instruction was prejudicial. The jury's award of $140,000 in actual damages shows that it did consider damages that did not result from the failure to damp-proof.[3] The amount awarded was far in excess of the evidence of the damages attributable to the failure to disclose the failure to damp-proof. Those damages were to be computed by taking the cost of repairs caused by the failure to damp-proof, which the evidence indicated was $29,600, and adding an additional ten to twenty percent of the $29,600. Under the evidence, the damages representing diminution in value could not have exceeded $35,520. Defendants were, accordingly, prejudiced by the failure to modify the damage instruction. *See Steffens v. Paramount Properties, Inc.,* 667 S.W.2d 725, 728 (Mo.App.1984).

■ Plaintiffs argue that the jury could consider damage evidence which did not result from the failure to disclose the condition of the foundation because it was admitted and not withdrawn. That evidence was admitted as relevant on the other counts of the petition on which the case was tried, but not ultimately submitted. Defendant realtors objected during trial to evidence other than damp-proofing and had a running objection. Defendant builders objected at the same time on the same grounds. Defendants did not request a withdrawal instruction when the counts on which that evidence was admitted were not submitted, but requested a different damage instruction, which was refused. Under these circumstances, defendants were not required to request a withdrawal instruction in order to be entitled to a new trial on the grounds that the jury considered improper damage evidence.

dence. *State ex rel. State Highway Com'n v. Johnson,* 544 S.W.2d 276, 279 (Mo.App. 1976). It was error to permit the jury to consider evidence of and award damages not within the scope of the applicable measure of damages. *Id.*

The trial court did not abuse its discretion or misapply the law in granting a new trial on the grounds that the jury was allowed to consider improper damage evidence. Points one through four are denied.

## II. *Negligence Per Se—Realtor Defendants*

For their fifth through eighth points, plaintiffs claim that the trial court erred in granting a new trial to the defendant realtors because plaintiffs were entitled to recover on a claim of negligence per se under sections 339.710 through 339.860 RSMo (Cum.Supp.1998), which, they argue, support a private right of action. They argue that sections 339.710 through 339.860 impose liability on the defendant realtors for failing to disclose all material adverse facts the realtor defendants knew or should have known prior to plaintiffs purchase of the house and do not require actual knowledge. They assert that the verdict-directing instructions did not impose a duty of discovery or investigation on the defendant realtors or allow the jury to impute knowledge of the defendant builders to the defendant realtors.

The defendant realtors respond that sections 339.710 through 339.860 do not create a basis for negligence per se, that the instruction submitting their liability did not contain the elements of negligent misrepresentation, and that it imposed liabili-

---

**3.** This award appears to approximate Mr. Foreman's revised estimate of repairs for all

problems ($134,000) plus 20% of that cost.

ty for failure to investigate contrary to Missouri law.

The primary issue is whether section 339.730 allows a private cause of action based on negligence per se. Section 339.730.3 is part of Chapter 339 which regulates real estate brokers and salespersons. It codifies the duties of a licensee acting as a seller's or landlord's agent and a "customer."

> 3. A licensee acting as a seller's or landlord's agent owes no duty or obligation to a customer, except that a licensee shall disclose to any customer all adverse material facts actually known or that should have been known by the licensee. A seller's or landlord's agent owes no duty to conduct an independent inspection or discover any adverse material facts for the benefit of the customer and owes no duty to independently verify the accuracy or completeness of any statement made by the client or any independent inspector.

Section 339.730.3.

■■■ "Whether negligence exists in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided against it." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997). Negligence per se arises where the legislature pronounces in a statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct, *Monteer v. Prospectors Lounge, Inc.*, 821 S.W.2d 898, 900 (Mo.App.1992), and the court then adopts the statutory standard of care to define the standard of conduct of reasonable person. Restatement Torts (Second) sections 286, 288 (1965). Negligence per se "is a form of ordinary negligence that results from the violation of a statute." 57A Am.Jur. 2d *Negligence* section 727 (1989). As a result, the jury is instructed on the statutory

standard of care rather than the care of the reasonable person. *See Egenreither*, 23 S.W.3d at 643–45.

■■■ Four requirements must be met to establish a claim for negligence per se: 1) a violation of a statute or ordinance; 2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; 3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and 4) the violation of the statute or ordinance must be the proximate cause of the injury. *Business Men's Assur. Co. v. Graham*, 891 S.W.2d 438, 455 (Mo.App. 1994).

■■■ Before we reach the question of a violation, we must first examine the statute itself to determine if it is a statute on which negligence per se may be premised. As an initial matter, we observe that this statute falls outside the class of safety statutes on which negligence per se is ordinarily based. "Negligence per se is in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care." 57A Am.Jur. 2d *Negligence* section 727 (1989). The doctrine of negligence per se has traditionally arisen in cases involving personal injury and physical injury to property. Plaintiffs have not cited any Missouri case that has extended the negligence per se doctrine to cases which involve damage to economic interests. For various reasons, the courts of this state have not found professional and business licensing statutes to be a basis on which claims for negligence per se can be made. *See Business Men's Assurance Co. v. Graham*, 891 S.W.2d 438, 455 (Mo.App.1994); *Imperial Premium Finance, Inc. v. Northland Ins. Co.*, 861 S.W.2d 596, 599 (Mo.App.1993); *Gipson v. Slagle*, 820 S.W.2d 595, 597 (Mo.App.1991). In par-

ticular, conduct prohibited by section 339.100 RSMo (2000), including, "(7) Any other conduct which constitutes untrustworthy or improper fraudulent or dishonest dealings or demonstrates bad faith or gross incompetence" has been held not to be a basis for negligence per se. *American Mortg. Inv. Co. v. Hardin–Stockton,* 671 S.W.2d 283, 294–95 (Mo.App.1984). In that case the court held: "The evidence in the instant case supports a submissible case upon the theories of breach of contract, breach of fiduciary duty and general negligence, but that same evidence does not support a claim for negligence per se pursuant to § 339.100." *Id.*

▄▄ The test to determine whether a violation of a statute may constitute negligence per se depends on legislative intent. 65 CJS Negligence Section 135; *see Dix v. Motor Market, Inc.,* 540 S.W.2d 927, 931 (Mo.App.1976). We do not find that section 339.730 was intended to replace the standard of care in a negligence action.

Section 339.730 is found within sections 339.710 through 339.860, entitled "Limited and Dual Agents, Designated Brokers and Agents." These are new provisions to Chapter 339 and became effective in 1997. One of the major purposes of these sections was to "create a 'statutory' agency which is intended to take the typical real estate agency relationship out of the realm of common law agency." Sherry A. Mariea and Timothy T. Sigmund, "Real Estate Agents Bid Farewell to Common Law," JMOB 96 (March–April 1998). Section 339.840 specifically provides that these provisions supercede "the common law of agency with respect to whom the fiduciary duties of an agent are owed in a real estate transaction, but do not limit civil actions for negligence, fraud, misrepresentation or breach of contract." Section 339.840.

▄▄ The statute in this case specifically indicated that it was meant to change the common law of agency but not limit civil actions for fraud or misrepresentation. The statute imposes on a licensee acting as a seller's or landlord's agent a circumscribed duty to disclose adverse material facts to a "customer," as defined in section 339.710(9). It does not replace the common law action against a seller and its real estate agent for failure to disclose as set out in *Seidel v. Gordon A. Gundaker Real Estate Co.,* 904 S.W.2d 357, 361 (Mo. App.1995) and *Reeves v. Keesler,* 921 S.W.2d 16, 21 (Mo.App.1996). To hold that this provision was meant to create a cause of action in negligence would allow a plaintiff to collect damages for fraud, misrepresentation, or failure to disclose without proving all of the traditional elements of those claims. We cannot conclude that the legislature intended, in enacting this statute, to replace these causes of action with a simple negligence action. We find persuasive the following language, which distinguishes this situation from negligence per se:

> On the other hand, where a statutory general rule of conduct fixes no definite standard of care which would under all circumstances tend to protect life, limb or property but merely codifies or supplements a common-law rule, which has always been subject to limitations and exceptions; * * * then the statute, in the absence of clear language to the contrary, should not be construed as intended to wipe out the limitations and exceptions which judicial decisions have attached to the common-law duty;

*Tedla v. Ellman,* 280 N.Y. 124, 19 N.E.2d 987, 990–91 (N.Y.1939) quoted in William L. Prosser on the Law of Torts section 36, at n. 1 (4th ed.1980). For all of the above reasons, we hold that section 339.730 may not be made the basis of a cause of action for negligence per se.

Because the statute does not provide a basis for negligence per se, we do not need to discuss whether any of the remaining requirements have been satisfied. We have, however, examined the verdict-directing instructions to determine if they set out the required elements of a viable cause of action. The instructions do not contain the required elements of fraudulent misrepresentation,[4] fraudulent omission,[5] or negligent misrepresentation.[6] Plaintiffs have not cited any authority that establishes a cause of action for negligent omission. Accordingly, the jury was not properly instructed on a viable theory of liability. Points five through eight are denied.

*Conclusion*

The judgment of the trial court ordering a new trial is affirmed and the case is remanded for a new trial, consistent with this opinion, on the liability of the realtor defendants and damages with respect to all defendants.[7]

WILLIAM H. CRANDALL, JR., P.J., and ROBERT G. DOWD, JR., J., concur.

4. *See Reeves v. Keesler,* 921 S.W.2d 16, 19 (Mo.App.1996); MAI 23.03.

5. *See Reeves,* 921 S.W.2d at 21.

6. *See Id.* at 20, fn. 1.

7. Defendant realtors' motion to dismiss plaintiffs' brief for failure to comply with Rule 84.04(c) is denied. Plaintiffs' motion to strike portion of the defendant builders' brief for failure to comply with Rules 84.04(c) and 84.04(f) is denied. Defendant builders' motion to strike plaintiffs' brief for failure to comply with Rule 84.04(c) and motion to dismiss the appeal as moot are denied. Plaintiffs' motion to strike the Supplemental Legal File is granted.